[S. F. No. 14881. In Bank.—May 1, 1933.]

MARIE VIDAL, Petitioner, v. J. M. BACKS, County Clerk, etc., Respondent.

Rutan & Mize, O'Melveny, Tuller & Myers, Louis W. Myers and Jackson W. Chance for Petitioner.

S. B. Kaufman, District Attorney, Forgy, Reinhaus & Forgy, S. M. Reinhaus and A. M. Bradley for Respondent.

THOMPSON, J.—A judgment of foreclosure and sale was rendered by the Superior Court of Orange County on the eighth day of March, 1933, in favor of the petitioner herein.

The respondent County Clerk has refused to issue a writ on the judgment and it is sought by this proceeding to compel him so to do. ■ The sole contention of respondent is that the judgment was rendered on a nonjudicial day and for that reason is void. The question arises by virtue of the proclamation of the President of the United States declaring certain bank holidays and our statutes respecting judicial work which may be done on general or special holidays.

First of all, it is well to note that in section 5 of article VI of our state Constitution it is provided as follows: "Superior courts, municipal courts and justice's courts in cities having a population of more than forty thousand inhabitants shall always be open, legal holidays and nonjudicial days excepted."

Section 10 of the Political Code, as amended March 6, 1933, so far as material to this case, reads as follows: "Holidays within the meaning of this code, are every Sunday, the first of January, twelfth of February, to be known as 'Lincoln day,' twenty-second day of February, thirtieth day of May, fourth day of July, ninth day of September, first Monday in September; twelfth day of October to be known as 'Columbus day', twenty-fifth day of December, eleventh day of November known as 'Armistice day', every day on which an election is held throughout the state, and every day appointed by the President of the United States or by the Governor of this state for a public fast, thanksgiving, or general or special holiday (except that on any day appointed by the Governor as a special holiday, all public offices and courts and all public schools of or under this state, or any city, county, city and county, township, district or political subdivision thereof, shall be open for the transaction of business as on days which are not holidays)."

Section 134 of the Code of Civil Procedure prior to March 10, 1933, read in part as follows: "No court other than the Supreme Court, must be open for the transaction of judicial business on any of the holidays mentioned in section '10' [referring to section 10, Pol. Code, already quoted in part] except for the following purposes:" (Here follow the exceptions, which are not material in the present proceeding.) While not governing in the instant case it may be well to note that on March 10, 1933, the language we have just

quoted from section 134 of the Code of Civil Procedure was amended by inserting after the word "holidays" and before the word "mentioned", the words "other than special holidays" and section 135 was amended to read as follows: "On all special holidays, as the term 'special holiday' is used in section 10 of the Political Code, the courts of this state shall be open for the transaction of any and all judicial business. If any day mentioned in section 10 of the Political Code, other than such a special holiday, happen to be the day appointed for the holding or sitting of a court, or to which it is adjourned, it shall be deemed appointed for or adjourned to the next day." We are not here concerned with the general holidays which the Governor of this state declared from March 2d to the 6th, inclusive, nor with the special holidays declared by him from March 7th to the 11th, inclusive, because it is apparent from what we have already quoted that the legislature has provided that so far as special holidays are concerned, no interference with the regular processes of the court shall be permitted or attempted. However, on March 6, 1933, the President of the United States, acting under the authority of the act of October 6, 1917 (40 Stats. at Large, 411), empowering him to "prohibit, under such rules and regulations as he may prescribe, by means of licenses or otherwise, any transactions in foreign exchange and the export, hoarding, melting, or ear-marking of gold or silver coin or bullion or currency . . . ", and by reason of the national emergency then existing which had caused the Governors of the various states to declare holidays in order to protect the financial structure, declared that "from Monday, the sixth day of March, to Thursday, the ninth day of March, nineteen hundred and thirty-three, both dates inclusive", there should "be maintained and observed by all banking institutions and all branches thereof located in the United States of America . . . a bank holiday, and that during such period, all banking transactions shall be suspended". On March 9th the President by proclamation continued the "bank holidays" in effect until further proclamation by the President.

It will thus be seen that the question with which we are first concerned is whether "bank holidays" are "special holidays" within the meaning and intent of section 10 of the Political Code—attention being called to the fact that such

special holidays as may be proclaimed by the President are not excepted with respect to judicial and public business and the schools, as are the special holidays proclaimed by the Governor of this state. In approaching the question we are confronted, first of all, by the principle as enunciated in *Didsbury* v. *Van Tassel*, 56 Hun, 423 [10 N. Y. Supp. 32]. "The avenues of approach to the courts should be open on all secular days; and great inconvenience and positive loss and injury will result from their diminution. We cannot, therefore, impute to the legislature an intention to diminish the number of judicial days, without unequivocal language expressive of such a design . . . " A very enlightening and instructive case (to which we refer solely for the purpose of illustrating the thought that the courts should ordinarily be open to redress grievances) is that of *Langabier* v. *Fairbury, Pontiac & Northwestern R. R. Co.*, 64 Ill. 243 [16 Am. Rep. 550], which involved the validity of an injunction issued on Sunday to prevent the railroad company, which had taken possession of a street after 12 o'clock on a Saturday night with the intention of finishing their track through its entire length before Monday morning, counting upon the intervening *dies non juridicus* by which to evade an injunction and the process of the court. The Supreme Court of Illinois, after pointing out that prior to the year 517, in which year a canon was promulgated exempting Sundays, the early Christians "used all days alike for the hearing of causes", and that thereafter Sunday became accepted by the common law as a nonjudicial day, says with respect to the question then being considered as follows:

"Here, this *dies non juridicus* was selected by the railway company as the proper day to commit a great outrage upon private and public rights, believing the arm of the law could not be extended on that day to arrest them in their highhanded and unlawful design. To the complainant the acts they were organized to perpetrate on that day were fraught with irreparable injury. Feeble indeed would be the judicial arm if it could not reach such miscreants.

"To save a debt of twenty dollars, judicial acts can be performed on Sunday, and maintained as well. To prevent the ruin of an individual, such an act must not be done! 'Lame and impotent conclusion.'

"In Comyn's Digest, title 'Temps.' under the head, *Dies non Juridicus*, it is said, the chancery is always open. So the Exchequer may sit upon a Sunday or out of term. P. 333 (C.5). There is nothing, to an intelligent mind, revolting in this.

"Suppose in time of high political excitement, a citizen is indicted for treason, and judgment of death pronounced against him by a servile judge, who, not a slave of the Crown, as were Tressilian, Scroggs and Jefferies, but yet the slave of an enraged populace, on an indictment never returned into court, or found by a grand jury, and defective in every essential, and this judgment pronounced on Saturday and the time of its execution fixed on the following Monday. To arrest this proposed judicial murder, an application is made to a member of the appellate court on the intervening Sabbath: who would justify the judge, should he fold his arms and, on the plea the day was not a judicial day, suffer the victim to be led to execution?

"The necessity of the case would be the law of the case. The judge who has no respect for this principle, is unworthy the ermine and an unfit conservator of the rights of the citizen.

"The case before us is not one of life or death, but it involves irreparable injury to property. An imperious necessity demanded the prompt interposition of chancery. On that principle the act is fully justified. This is the dictate of right, of reason, of common justice and common sense."

To the same general effect we are squarely faced by that portion of section 5 of article VI of our Constitution which we have already quoted, indicating a determination on the part of the people, expressed in their fundamental law, that the trial courts shall always be open for business, with the minor exceptions of legal holidays and nonjudicial days as those expressions have heretofore been generally understood and accepted. Again, we must bear in mind a fundamental principle of government applying to constitutional courts to the effect that they constitute an independent branch of government which cannot be hampered or limited in the discharge of its functions by either of the other two branches.

With these thoughts in mind, we return to the question, convinced that sound public policy requires a strict

interpretation, so far at least as the courts are concerned, of the words "bank holiday". It is certain that the bank holidays do not fall within the orbit of our general understanding of the word "holiday". That term is defined in 29 C. J. 761, as follows: "(1) a consecrated day, a religious festival, (2) a day on which the ordinary occupations are suspended, a day of exemption, i. e., cessation from work, a day of festivity, recreation, or amusement; and a legal holiday is a day designated and set apart by legislative enactment for one or more of such purposes." For similar statements of its meaning reference may be had to *State* v. *Shelton*, 38 Ind. App. 80 [77 N. E. 1052]; *St. Louis, B. & M. R. R.* v. *Hicks*, (Tex. Civ. App.) 158 S. W. 192; 15 Am. & Eng. Ency. of Law, 512. Indeed, we need only to consult our own conception of a holiday to realize that it has reference to a day set apart for worship, for reverence to the memory of a great leader and benefactor of humanity, to rejoice over some great national or historical event, or rekindle the flame of an ideal.

As the term "non-judicial day" is used in the Constitution we cannot find that it is different from the expression "legal · holiday". Originally the phrase *dies non juridicus* was used to describe Sundays and some particular festivals which the church by proclamation ordained should not be "profaned by the tumult of forensic litigation". (See article *Dies Non Juridicus*, 7 So. Law Rev. 697.) To-day it simply means those days "on which process cannot ordinarily issue or be executed or returned, and on which courts do not usually sit". (*Whitney* v. *Blackburn*, 17 Or. 564 [21 Pac. 874, 11 Am. St. Rep. 857].) And, to like effect, is the term defined in Bouvier's Law Dictionary under the heading *dies non*.

We have already seen that the bank holiday was proclaimed not for any of the purposes generally denoted or connoted by the word "holiday", but for the purpose of preventing the hoarding of gold, silver and currency. It was limited in its effect to the banks. The proclamation did not in any sense of the word pretend to call upon the people generally for an observance of any kind, nature or description, but was designed to close the banks and prevent the paying out of coin and currency. · Had the period been designated a special holiday by the President, there might be more

question, but not having been so designated we are compelled by all the reasons heretofore mentioned to conclude that the period of the bank holiday is not a period of special holidays within the meaning and intent of section 10 of the Political Code.

It follows that the peremptory writ of mandate should issue as prayed and it is so ordered.

Waste, C. J., Curtis, J., Seawell, J., Langdon, J., Preston, J., and Shenk, J., concurred.