[Civ. No. 11159.   Second Appellate District, Division Two.—November 25, 1936.]

SECURITY–FIRST NATIONAL BANK OF LOS AN-GELES (a National Banking Association), Respondent, v. MANERVA D. BENNETT, as Executrix, etc., et al., Appellants.

T. Frank Courtney, Walter E. Bennett and George N. Foster for Appellants.

Loren A. Butts for Respondent.

WOOD, J.—Defendants appeal from a judgment in which plaintiff was awarded the balance due on a promissory note secured by a trust deed after a sale of the property given as security.

The action was commenced on August 15, 1933, against seven individual defendants who had signed the note. One of these defendants, William H. Bennett, had died May 4, 1933. Plaintiff presented to Manerva D. Bennett, executrix of the will of William H. Bennett, deceased, on August 8, 1933, its verified claim for the amount for which judgment was rendered. This claim was rejected by the executrix on August 22, 1933. An amended and supplemental complaint was filed on February 9, 1934, in which the death of William H. Bennett was alleged and the presentation and rejection of the claim to the executrix was set forth. ▉ It is now contended by defendants that the action is barred by section 714 of the Probate Code, which provides that suits must be brought against the executrix within three months after the date of service of notice of the rejection of the claim. In the case of *Gregory* v. *Clabrough's Executors,* 129 Cal. 475, [62 Pac. 72], the action was commenced during the lifetime of the deceased and the point was made that "the suit was not revived against the executor for over three months after the claim was rejected". The court held: "Section 1498 of the Code of Civil Procedure (now sec. 714 of the Probate Code) can have no application to a case like the present, where the action was already pending when the claim was presented. All that is required of the plaintiff in such case is simply to present his claim." The facts of that case are not exactly similar to the facts of the present appeal, the difference being that one of the defendants in the present case died shortly before the commencement of the action. It can be said with equal justification that the section "can have no application to a case like the present". In *Gregory* v. *Clabrough's Executors, supra,* the court applied a liberal interpretation to the code section. The point now presented

is highly technical and does not affect the substantial rights of the parties. Before the filing of the amended and supplemental complaint the executrix had ample notice of the claim and opportunity to approve it. There has been no miscarriage of justice (Const., art. VI, sec. 4½.)

■ Defendants attack the proceedings by which the sale of the secured property was brought about. In the notice of sale it was stated that the sale would be made "for cash payable in United States gold coin at time of sale" and the point is made that by reason of various executive orders of the President of the United States and the Secretary of the Treasury authorized under the Emergency Bank Act of March 9, 1933, it was unlawful on and after May 1, 1933, for any person to hold, retain or use gold coin, gold bullion or gold certificates. On June 5, 1933, the Congress of the United States passed a joint resolution in which it was provided: "Every obligation, heretofore or hereafter incurred, whether or not any such provision (for payment in gold coin) is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts." (48 U. S. Stats., chap. 48, pp. 112, 113 [31 U. S. C. A., sec. 463].) The validity of this resolution was sustained by the Supreme Court of the United States in the case of *Norman* v. *Baltimore & Ohio R. Co.,* 294 U. S. 240 [55 Sup. Ct. 407, 79 L. Ed. 885, 95 A. L. R. 1352]. In *Security-First Nat. Bank of Los Angeles* v. *De La Cuesta,* 15 Cal. App. (2d) 302 [59 Pac. (2d) 542], the court had before it for consideration the same point which is now presented. It was there held: "An offer to pay in gold coin made at the sale could have been discharged by payment in any legal coin or currency. All persons are conclusively presumed to have known these facts and to have been able to construe the notice of sale accordingly. The notice was not insufficient in fact nor was it legally void because of the provision for payment in gold coin."

■ Defendants further attack the proceedings leading up to the sale by claiming that the plaintiff bank took certain steps necessary to bring about the sale during the period in which plaintiff bank was precluded from transacting banking business by the proclamation of the President of March 6, 1933. The declaration of default and the direction

to sell was executed by plaintiff on March 7, 1933, and recorded by the trustee on March 8, 1933. The proclamation of the President preventing the doing of "banking business" contained a provision authorizing the Secretary of the Treasury to grant permission to banks to continue "usual banking functions" in a limited manner. Plaintiff contends that it was incumbent upon defendants to prove that plaintiff had not secured permission to continue banking "functions" under this provision of the proclamation and that defendants failed to make such proof. We find it unnecessary to pass upon this contention for we must hold that the steps which plaintiff took to bring about a sale of the property could not be classified as banking business within the terms of the proclamation, which provided in part: "Now, therefore, I, Franklin D. Roosevelt, President of the United States of America, in view of such national emergency and by virtue of the authority vested in me by said act and in order to prevent the export, hoarding or ear-marking of gold or silver coin or bullion or currency, do hereby proclaim, . . . a bank holiday, and that during said period all banking transactions shall be suspended. During such holiday, exceptions as hereinafter provided, no such banking institution or branch shall pay out, export, earmark or permit the withdrawal or transfer in any manner or by device whatsoever, of any gold or silver coin or bullion or currency or take any other action which might facilitate the hoarding thereof; nor shall any such banking institution or branch pay out deposits, make loans or discounts, deal in foreign exchange, transfer credits from the United States to any place abroad, or transact any other banking business whatsoever." This proclamation was before the court for consideration in *Vidal* v. *Backs*, 218 Cal. 99 [21 Pac. (2d) 952, 86 A. L. R. 1134], and it was there said: "We have already seen that the bank holiday was proclaimed . . . for the purpose of preventing the hoarding of gold, silver and currency. It was . . . designed to close the banks and prevent the paying out of coin and currency." Nothing appears in the proclamation to prevent the action by the bank of which complaint is made. Many persons and corporations not in the banking business engage in the business of lending money on the security of real estate. Manifestly, such firms and corporations were not precluded by the proclamation from taking steps to

bring about foreclosure sales. It would be unreasonable to hold that it was the intention of the President and the Congress to deny to banks the privileges permitted to others in the matter of foreclosures.

The judgment is affirmed.

Crail, P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 21, 1937.