[Civ. No. 11763. First Dist., Div. Two. Mar. 12, 1942.]

ANTONIA DA ARAUJE, Respondent, v. FRANK RODRI-
QUES, Appellant.

Randall O'Neill, George A. Martinelli and Morettini & O'Neill for Appellant.

H. A. Gabriel for Respondent.

DOOLING, J. pro tem.—This is an appeal by the defendant from a judgment for plaintiff in an action to quiet title. On January 10, 1933, defendant in this action recovered judgment by default against the plaintiff in this action in the Justice's Court of Santa Clara Township for $260.13 and costs. A motion was thereafter made to set this default judgment aside. On March 3, 1938, the justice denied this motion and a writ of execution was issued on the same day. Pursuant to this writ the sheriff sold the property here in suit and the defendant herein became the purchaser at the execution sale. It was stipulated that no motion was made, nor any affidavit filed in support of the issuance of said execution as required by section 685 of the Code of Civil Procedure.

It is appellant's position that the act of the justice of the peace in issuing execution over five years after the date of entry of the judgment without the notice, motion and affidavit required by section 685 was not a void act but only voidable and hence not subject to collateral attack. Appellant cites Freeman on Executions, volume I (3d edition), pages 104-107, section 29; 10 R. C. L., pages 1226-1227, section 14; 21 Am. Jur., page 35, section 45; 23 C. J., page 379, section 143; and *Eddy* v. *Coldwell*, 23 Ore. 163 [31 Pac. 475, 37 Am. St. Rep. 672]. The rule announced in all of these citations is fully stated in Freeman on Executions, volume I, page 104, et seq.:

"The consequences of issuing an execution after a year and a day are the same as the consequences of a premature issue. The writ is voidable, but not void. The defendant may take proceedings to have it set aside. If he chooses to interpose no objection to the irregularity, others cannot do so for him. Even he cannot attack it collaterally; and a levy and sale made under it are sufficient to transfer his title. The decisions made under the English statute requiring the original

execution to issue within a year and a day seem to be equally applicable to cases where executions have issued at too late a day under American statutes. . . . The reasoning on which all these decisions, whether made under English or American statutes, rests, is this: the judgment, notwithstanding the lapse of the year and a day, or other time designated, is, unless actually satisfied, still in force. From the lapse of time, the presumption may be indulged that a satisfaction has taken place, or that some reason exists for the non-issuance of execution. To give the defendant an opportunity of showing cause against the execution, the plaintiff is required to bring him before the court by *scire facias* or by motion, and thus give him an occasion to show whether the judgment has been satisfied. But as the power to issue execution still exists, its issuance without the *scire facias* or motion is merely the erroneous exercise of a conceded power, and must, like all other errors, be corrected by some appropriate proceeding . . .".

To test the applicability of this rule to our own statutory situation it is desirable to sketch briefly the legal background against which it was evolved and compare it with our own statutory development.

"A judgment not satisfied or barred by lapse of time, but temporarily inoperative so far as the right to issue execution is concerned, is usually called a dormant judgment. At common law a judgment lost its force as a lien on the judgment debtors realty, and no execution could be issued thereon when it had lain dormant for a year and a day. Upon failure so to sue out execution, plaintiff was driven to his action of debt upon the judgment, or to a *scire facias* to revive the judgment and obtain fiat for execution under the Statute of Westminister II (13 Edw. I) St. 1c 45. By statute, in the various jurisdictions of this country, there is now a fixed limitation of the period during which the life of a judgment continues, generally considerably greater than the common law 'year and a day.' But these statutes also universally provide that a judgment which has become dormant and lost its lien may be revived and restored to its original force by *scire facias,* action on the judgment, or special statutory proceeding." (34 C. J. p. 655.)

It is to be noted of this statement that the "year and a day" within which execution must be issued in the English practice was not coterminous with the period fixed by the

statute of limitations for a suit upon the judgment but shorter than that period and execution could only be authorized to issue by resort to *scire facias* where the judgment itself was not barred by the statute of limitations.

The following quotation from *Browne & Manzanares Co.* v. *Chavez*, 9 N. M. 316 [54 Pac. 234] aptly summarizes the historical background and points the distinction between a dormant judgment, which could be revived by resort to *scire facias* for the purpose of obtaining the issuance of execution, and a barred judgment, which under no circumstances could support the issuance of a valid writ.

"At common law the life of a judgment was twenty years, but, if an execution was not issued thereon within a year and a day, the judgment became dormant, and an alias execution could not issue thereon, unless revived by *scire facias*. The judgment, therefore, although it had been dormant, was not dead, as its life was twenty years. . . . The writ of *scire facias* was adopted at common law as the proper means of restoring vitality to a dormant judgment, before it was satisfied or barred by limitation. . . . It is clear that at common law the proceeding by *scire facias* was not a new or distinct action, but simply a writ or process in the original suit, for the sole purpose of securing the right to issue execution upon a dormant judgment prior to the expiration of its legal life, and it was not intended nor used for the purpose of reviving a judgment whose life had expired and become barred by a statute of limitation."

It will be found upon examination that in most, if not all, of the states of this country which have followed the rule that the issuance of execution upon a dormant judgment without resort to *scire facias,* or the substituted statutory proceeding by motion, is merely voidable and not void, the same legal situation exists, i. e., the period within which execution issues as a matter of right is shorter than the period of the statute of limitations for suit upon the judgment and it is only, to adopt the phraseology of the Supreme Court of New Mexico above quoted, while the judgment is dormant but not dead that execution may be authorized by such proceedings.

From the time of the adoption of the Practice Act, with the qualifications hereinafter noted, the situation in this state has been the exact converse. The period of limitation for suit upon a judgment has been fixed at five years during

which period execution issued as a matter of right, and engrafted upon that has been a discretionary power in the courts to issue execution after the lapse of the period of limitation. Thus instead of providing for the discretionary issuance of the writ upon a dormant judgment after the lapse of some lesser period than that of the statute of limitations, our legislature saw fit to provide for the discretionary issuance of the writ upon a judgment otherwise dead by expiration of the limitation period. In the Practice Act the five-year limitation for suits upon judgments was found in section 209 and the provision for issuance of execution after five years in section 214. (See *Mason* v. *Cronise*, 20 Cal. 211, 218.) Section 214 was repealed in 1861. (Stats. 1861, p. 116.) It was reenacted in 1866 (Stats. 1866, p. 704), but made applicable only to cases "other than for the recovery of money"; was so adopted into section 685 of the Code of Civil Procedure and remained in that form until 1895, when the words "other than for the recovery of money" were deleted and the last sentence of the section added. (11 Cal. Jur. pp. 47-49.)

The unusual and somewhat anomolous legal situation created by allowing execution to issue on a judgment otherwise barred by the statute of limitations was the subject of comment in *Mason* v. *Cronise, supra,* and *Doehla* v. *Phillips,* 151 Cal. 488, 494 [91 Pac. 330], but in each case the court held that despite the apparent inconsistency the legislative intent was clear.

After the amendment of the section in 1895, so as to include within the cases in which execution could be issued after the lapse of five years judgments for the recovery of money, our Supreme Court in *Doehla* v. *Phillips, supra,* following *Bryan* v. *Stidger,* 17 Cal. 270, and *Harrier* v. *Bassford,* 145 Cal. 529 [78 Pac. 1038], held that the section as it then read authorized the court to make an order for the issuance of execution upon *ex parte* application without notice to the judgment debtor. This continued to be the law until the amendment of section 685 in 1933 when the section was cast in its present form expressly requiring "due notice to the judgment debtor." The obvious and only purpose of this amendment was to change the previously well-established rule that an order for execution to issue after five years could be made without notice to the judgment debtor, and to require

such notice to be given thereafter in all cases as a condition precedent to the making of every such order.

The question that presents itself is whether the legislature by this amendment to section 685 intended to make the giving of the notice jurisdictional to the making of the order for issuance of execution after the lapse of five years in the sense that any such order made without notice would be void, or whether it merely intended to provide a further procedural step the failure to take which would render the order for execution vulnerable to direct attack upon appeal but still leave it immune to collateral attack.

In our decision of this question we are entitled to consider the legislative history of section 685 and to contrast it with the corresponding history of the revival of dormant judgments in England and the other jurisdictions of this country. Under the English law and in most of the jurisdictions of this country, as we have pointed out, under no circumstances could execution issue upon a judgment barred by the statute of limitations. The issuance of execution without leave of court after the lapse of a year and a day or other substituted period was therefore supported by a judgment valid and enforceable for all purposes. Under our system the judgment at the end of five years is dead and unenforceable for all purposes except that execution may be issued upon it by leave of court obtained in the manner provided in section 685. Such an execution is not supported by a judgment otherwise valid and enforceable but gets its vitality solely by reason of the order of court for its issuance. The distinction is real and important. It has been consistently held under section 685 that no mere lapse of time, however long, is a bar to an order for the issuance of execution. (As examples see *Hatch* v. *Calkins*, ▌(Cal. App.) [122 Pac. (2d) 126], where execution issued after the lapse of 30 years; *Palace Hotel Co.* v. *Crist*, 6 Cal. App. (2d) 690 [45 Pac. (2d) 415], after 20 years; and *Welk* v. *Conner*, 102 Cal. App. 286 [282 Pac. 963], after 13 years.) When the Legislature amended section 685 in 1933 so as to require "due notice to the judgment debtor" in all cases as a condition to the issuance of execution on judgments barred by the statute of limitations we are entitled to believe that it did so with knowledge of the fact that there was no express limit to the time within which such execution could be ordered

to issue, and that no barred judgment, however old, became so stale that as a matter of law it would not support such an order. It is reasonable to conclude that in requiring the giving of notice to the judgment debtor in all such cases the legislature intended to enact a jurisdictional requirement. In effect it said: ''Hereafter you shall not have execution on a barred judgment unless you first give due notice of your motion for that purpose.'' The question is purely one of legislative intent. To hold that the requirement of notice is procedural but not jurisdictional would be to emasculate by judicial construction an amendment whose sole purpose is clear, that no judgment barred by limitation should be enforced against a judgment debtor without first giving him an opportunity to be heard.

There is a further factor in this case which equally leads to the conclusion that the issuance of the writ of execution in this case was a void act. It is settled that in issuing writs of execution a justice of the peace acts in a purely ministerial capacity. (6 Cal. Jur. Ten Year Supp., p. 618; *Dunn* v. *Justice's Court,* 136 Cal. App. 269 [28 Pac. (2d) 690]; *Santini* v. *Justice's Court,* 218 Cal. 671 [24 Pac. (2d) 761]; *Hamilton* v. *Tutt,* 65 Cal. 57 [2 Pac. 878]; *Town of Hayward* v. *Pimental,* 107 Cal. 386 [40 Pac. 545].) His act in that respect is no different than that of the clerk of a court of record in issuing the writ.

The record on appeal shows no order of the justice of the peace granting leave for the issuance of execution, which would be a judicial act, but only the issuance of the writ, a purely ministerial act. The only docket entry shown reads simply: ''Execution issued.'' Conceding that, if the justice had purported to make an order for the issuance of execution without the notice to the judgment debtor required by section 685, such action would have been merely an erroneous judicial act but not void (*Gray* v. *Hall,* 203 Cal. 306 [265 Pac. 246]), it is the law that a purely ministerial act is void unless the officer performing it conforms strictly to the provisions of the statute. (*Baird* v. *Smith,* 216 Cal. 408 [14 Pac. (2d) 749].) Since nothing is presumed in favor of the jurisdiction of a justice's court (*Antilla* v. *Justice's Court,* 209 Cal. 621, 624 [290 Pac. 43]), we must assume in the absence of proof that the purely ministerial act of issuing the writ of execution was not preceded by or based upon a judicial order granting leave for its issuance. The case in

this respect is no different than if a county clerk purported to issue a writ of execution after five years in violation of the terms of section 681, Code of Civil Procedure, and without leave of court as required by section 685.

For the reasons given the judgment appealed from is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.