[L. A. No. 22513. In Bank. Dec. 7, 1954.]

T. C. LAUBISCH, Respondent, v. MABEL ROBERDO et al.,
Defendants; LILY A. COWAN, Appellant.

Ernest W. Pitney for Appellant.

Glen Behymer and Robert E. Rosskopf for Respondent.

EDMONDS, J.—T. C. Laubisch, the purchaser of certain real property at a sale held pursuant to a judgment foreclosing a mechanic's lien, sued to quiet his title and recover damages and rent. Only Lily A. Cowan has appealed from the judgment in his favor.

At the trial the parties stipulated as follows:

On January 27, 1941, a decree was entered ordering the sale of the property to satisfy a mechanic's lien. This decree directed that the sale be made by a named commissioner and its validity is not questioned. No further action was taken until January 16, 1946, when the judgment creditor directed the commissioner appointed in the decree of foreclosure to proceed with the sale. A writ of enforcement was issued on February 7th or 8th of that year, and on March 5th the property was sold to Laubisch. There was no redemption within one year and the commissioner's deed to Laubisch was recorded on March 7, 1947.

Before the foreclosure sale, Mabel Roberdo held the fee title to the property through a series of conveyances from the debtor in the foreclosure decree. After the present action was begun, she executed a deed to the property to Jennie Wentworth, who in turn conveyed her interest to Mrs. Cowan. All of these persons were made defendants in Laubisch's action to quiet his title to the property. As to Mabel Roberdo, the action was dismissed in open court. Jennie Wentworth did not appeal from the judgment against her.

By her answer, Mrs. Cowan denied that Laubisch was the owner of the property and admitted that she claimed an interest in it adversely to him. As affirmative defenses, she pleaded ownership of the property by adverse possession and that Laubisch's action is barred by laches.

The court found that the foreclosure sale, duly and regularly conducted under the writ of enforcement, was timely held, and that Laubisch has been the owner of the property since March 7, 1947. It also found that Mrs. Cowan has failed to establish the elements of ownership by adverse possession. A further finding was that neither Laubisch nor his predecessor in interest was guilty of laches.

Mrs. Cowan challenges the findings as to her lack of title by adverse possession and the regularity of the sale upon the ground that they are without evidentiary support. Furthermore, she asserts, Laubisch is barred by laches from claiming any interest in the property. Laubisch takes the position that the evidence supports the findings in all respects. In any event, he argues, Mrs. Cowan may not, under the pleadings in this suit, question the validity of the foreclosure sale.

The record does not require a finding that Mrs. Cowan acquired ownership by adverse possession. To establish such title, the claimant must show: (1) his possession by actual occupation under such circumstances as to constitute reasonable notice to the owner; (2) his possession hostile to the owner's title; (3) his claim to the property as his own, either under color of title or claim of right; (4) his continuous and uninterrupted possession for five years; (5) the payment by him of all of the taxes levied and assessed upon the property during the period. "Unless each one of these elements is established by the evidence, the plaintiff has not acquired title by adverse possession." (*West* v. *Evans*, 29 Cal.2d 414, 417 [175 P.2d 219].)

In at least two respects Mrs. Cowan failed to establish title by adverse possession. To be considered hostile, the acts relied upon must operate as an invasion of the right of the party against whom they are asserted. (*City of San Diego* v. *Cuyamaca Water Co.*, 209 Cal. 105, 133 [287 P. 475].) The situation here is analogous to a mortgagor-mortgagee relationship. A mortgagor or his grantee in possession of mortgaged property may not set up the statute of limitations against the mortgagee; the possession of the mortgagor is presumed to be amicable and in subordination to the mortgage. (*Comstock* v. *Finn*, 13 Cal. App.2d 151, 157 [56 P.2d 957]; *Baumgarten* v. *Mitchell*, 10 Cal.App. 48, 51 [101 P. 43].) The bare fact of foreclosure does not alter the situation. (*Knowlton* v. *Coye*, 76 N.D. 478, 484 [37 N.W.2d 343].) Moreover, "[t]he statute of limitations does not commence running against a purchaser

of land at a sheriff's sale until the sheriff's deed has been delivered." (*Leonard* v. *Flynn,* 89 Cal. 535, 542 [26 P. 1097, 23 Am.St.Rep. 500]; *Jefferson* v. *Wendt,* 51 Cal. 573, 575; *Comstock* v. *Finn, supra,* 13 Cal.App.2d 157.)

■ Mrs. Cowan's possession was not hostile to the interests of the judgment creditor, who had only a lien upon the land, nor adverse to Laubisch until March, 1947, when he obtained the commissioner's deed. ■ Furthermore, the evidence shows that one Hamilton occupied the premises, as a tenant of Laubisch, from April until October, 1947, a sufficient interruption of the running of the five-year period commencing August, 1942, to prevent the acquisition of title by adverse possession. ■ Mrs. Cowan also failed to prove that she paid the taxes for the necessary period. There is no evidence as to who paid the taxes for 1945, and it is stipulated that Laubisch paid them for 1947. In these circumstances it is clear that there is substantial evidence to support the trial court's determination that no title by adverse possession was acquired.

Mrs. Cowan next urges that the sale to Laubisch was void because conducted more than five years from the entry of the decree of foreclosure. One ground relied upon is that the judgment constituted a lien upon the real property which expired five years from the date of entry. She maintains that the right to have the property sold was dependent upon the existence of a lien acquired pursuant to section 674 of the Code of Civil Procedure. ■ Under that statute, upon recordation of an abstract of judgment with the county recorder, the judgment becomes a lien upon all real property of the judgment debtor, not exempt from execution, located within the county. Its purpose is to give the judgment creditor immediate security for the subsequent enforcement of the judgment. (See *Menges* v. *Robinson,* 132 Cal.App. 647, 651 [23 P.2d 526].) The lien continues "for five years from the date of the entry of the judgment or decree unless the enforcement of the judgment or decree is stayed on appeal."

■ Laubisch's title, however, was not obtained by the enforcement of the statutory judgment lien; his rights are based upon a sale directed by the judgment itself to enforce a lien of an entirely different origin. A similar situation existed in *Lone Jack Mining Co.* v. *Megginson,* 82 F. 89 [27 C.C.A. 63], a case arising under California law. There the purchaser at a sale to foreclose a mortgage sued to quiet its title. The record showed that the sale was conducted more

than five years from the entry of judgment, although an order of sale was obtained before that time. Claimants of the mortgagor contended that the sale was void because of the expiration of the period provided for a judgment lien. The court said: ''The lien which was enforced upon the foreclosure sale was not a statutory judgment lien, but was the contract lien of the mortgage. . . . The complainant's title rests upon the mortgage lien, and upon the foreclosure sale made in pursuance thereof, and the rights of the parties are those of the mortgagors and mortgagees.'' (P. 93.) Similarly, Laubisch's title does not stem from a judgment lien authorized by section 674, but rests upon the mechanic's lien and the foreclosure sale made to enforce it.

Another ground for asserting that the sale was void is that the writ of enforcement, pursuant to which the sale was made, was ineffectual to authorize the commissioner to sell the property, having been issued more than five years after the entry of judgment in the foreclosure suit and without an order of the court made after notice and motion.

Section 681 of the Code of Civil Procedure provides: ''The party in whose favor judgment is given may, at any time within five years after the entry thereof, have a writ of execution issued for its enforcement. If, after the entry of the judgment, the issuing of execution thereon is stayed or enjoined by any judgment or order of court, or by operation of law, the time during which it is so stayed or enjoined must be excluded from the computation of the five years within which execution may issue.'' Section 684 of that code provides that ''when the judgment requires the sale of property, the same may be enforced by a writ reciting such judgment, or the material parts thereof, and directing the proper officer to execute the judgment. . . .'' The following section, in part, provides: ''In all cases the judgment may be enforced or carried into execution after the lapse of five years from the date of its entry, by leave of the court, upon motion, and after due notice to the judgment debtor accompanied by an affidavit or affidavits setting forth the reasons for failure to proceed in compliance with the provisions of section 681 of this code. The failure to set forth such reasons as shall, in the discretion of the court, be sufficient, shall be ground for the denial of the motion.''

■ The quoted sections of the Code of Civil Procedure are applicable to proceedings in an action to foreclose a mechanic's lien. (Code Civ. Proc., § 1201.1; *Withington* v.

*Shay,* 47 Cal.App.2d 68, 73 [117 P.2d 415, 119 P.2d 1].)
 Such a lien is in the nature of a mortgage and an action for its foreclosure resembles a proceeding to foreclose a mortgage; the same procedural and substantive principles are generally appropriate in both cases. (*Curnow* v. *Happy Valley Blue Gravel & Hydraulic Co.,* 68 Cal. 262, 264 [9 P. 149] ; *Ritter* v. *Stevenson,* 7 Cal. 388, 389 ; *Withington* v. *Shay, supra,* p. 73.) The limitation of time imposed by section 681 is applicable to a judgment in a foreclosure case, although the provision refers only to "the execution" of a judgment. (*Wheeler* v. *Eldred,* 121 Cal. 28, 30 [53 P. 431, 66 Am.St.Rep. 20] ; *Jacks* v. *Johnston,* 86 Cal. 384, 385 [24 P. 1057, 21 Am.St.Rep. 50] ; *Dorland* v. *Hanson,* 81 Cal. 202, 204 [22 P. 552, 15 Am.St.Rep. 44] ; see *Southern California Lbr. Co.* v. *Ocean Beach Hotel Co.,* 94 Cal. 217, 223 [29 P. 627, 28 Am.St.Rep. 115].)

Laubisch takes the position that the writ of enforcement was timely issued. Although he concedes that it issued more than five calendar years after the entry of judgment, he asserts that the statutory time was extended by intervening holidays. He relies upon section 12a of the Code of Civil Procedure which, at the time the writ was issued, provided : "As to any act provided or required by law to be performed within a specified period ·of time, such period of time is hereby extended. . . . (b) By such number of days as equals the number of holidays (other than special holidays) appointed by the President or by the Governor and which occur within or during such period; . . .."

Judgment was entered on January 27, 1941. The writ of enforcement was issued on either the 7th or 8th of February, 1946, but the record shows that the parties accepted the later one as correct. This date is 12 days after the expiration of five years from the entry of judgment.

Courts take judicial notice of " [p]ublic and private official acts of the legislative, executive and judicial departments of this state and of the United States." (Code Civ. Proc. § 1875, subd. 3.) The parties concede that during the period in question there were nine holidays within the meaning of section 12a, subsection (b). The controversial dates are April 14, 1945, the day of the funeral of President Franklin Roosevelt, August 15 and 16, 1945, both known as "V-J Day."

Section 6700, subdivision (n), of the Government Code (formerly Pol. Code, § 10) now provides that holidays in-

clude "[e]very day appointed by the President or Governor for a public fast, thanksgiving, or holiday." ▮ A holiday "has reference to a day set apart for worship, for reverence to the memory of a great leader and benefactor of humanity, to rejoice over some great national or historical event, or rekindle the flame of an ideal." ·(*Vidal* v. *Backs,* 218 Cal. 99, 105 [21 P.2d 952, 86 A.L.R. 1134].)

By presidential proclamation, April 14, 1945, was "a day of mourning and prayer." Although a strict construction of the Government Code would uphold the conclusion that the day was not a holiday, the common understanding of the word as stated in *Vidal* v. *Backs, supra,* is to the contrary.

▮ The purpose of section 12a was to give to persons required by law to perform an act within a certain period an extension ·of time equal to the number of intervening holidays which deprived them of access to public offices or institutions for the transaction of business. But August 15th and 16th of 1945 were designated "holidays" only for the purpose of allowing employers reimbursement for the wages paid to employees who did not work on those days, and Executive Order 9600 so providing was not issued until August 20th. That order did not "set apart" those days as holidays within the meaning of section 12a.

▮ However, Acting Governor Houser, on August 14, 1945, proclaimed August 15th "to be a legal holiday in the State of California, in official commemoration of the surrender of Japan and the close of the terrible world wide struggle in which we have had a part." Accordingly, that date must be considered a holiday so as to extend the five-year period an additional day. With April 14, 1945, this holiday brings to 11 the total of holidays during the five-year period—one less than that required to support issuance of the writ of enforcement.

An additional day is claimed by Laubisch under subsection (a) of section 12a. That section extends the period of computation "if the last day of such period falls upon a holiday." Because January 27, 1946, the date when the five years originally would have elapsed, was a Sunday, he asserts that the period should be extended an additional day.

▮ The holidays referred to in subsection (b) had occurred prior to that date and caused the period to extend beyond it. (See *Trujillo* v. *Trujillo,* 71 Cal.App.2d 257, 258-259 [162 P.2d 640].) Thus, the last day of the period

was not a Sunday, and this is true whether it be held that there were 9, 10, 11, or 12 holidays intervening. Insofar as *Estate of Harker*, 88 Cal.App.2d 6 [198 P.2d 51], announces a contrary rule, it is disapproved.

Even if the writ of enforcement was not timely issued, Laubisch next contends, that defect does not render the sale void. One basis for this contention is the view that the writ is superfluous. As he reads section 684 of the Code of Civil Procedure, a writ of enforcement is not essential to carrying into effect a decree of foreclosure. Particularly is this true, he argues, when the commissioner named in the decree and directed to perform the sale in fact carries the judicial order into effect.

In an ordinary action of foreclosure in California, which has adopted the lien theory of mortgages (see *Sichler* v. *Look*, 93 Cal. 600, 610 [29 P. 220]), "the judgment need only determine the amount of the debt, the defendant who is personally liable therefor, and direct a sale of the mortgaged lands and an application of their proceeds to satisfy this amount." (*Blochman Commercial & Sav. Bank* v. *F. G. Investment Co.*, 177 Cal. 762, 767 [171 P. 943]; *Sichler* v. *Look, supra*, at page 610; and see Code Civ. Proc., § 726.) Under this system the term "foreclosure" has acquired a modern significance. "Instead of being effected by the judgment itself, [the transfer of title] . . . is effected by the sale under the judgment, and therefore a provision in the judgment for the foreclosure becomes meaningless and redundant." (*Sichler* v. *Look, supra*, at p. 611.)

It is clear that in this state a judgment in the form shown by the present record will not support a sale of the specified property. "The Sheriff [or commissioner appointed by the decree] does not bear such a relation to the Court that he must take notice of its orders and judgments, and without process execute and carry into effect those that require the aid of a ministerial officer. The general rule is that process is the authority of the Sheriff, and no reason is given why in case of a decree of foreclosure . . . an exception should be found to the rule." (*Heyman* v. *Babcock*, 30 Cal. 367, 369.)

Formerly, under the Practice Act of this state, the procedure in a foreclosure case was to provide the sheriff with a copy of the judgment attested by the clerk. (*H. Newmark & Co.* v. *Chapman*, 53 Cal. 557, 558-559; *Heyman* v. *Babcock, supra*, p. 370.) The requirements of such a judgment

were that it direct a sale of the mortgaged premises, commit the duty of making the sale to the sheriff, and give general instructions as to the sale. (See *Heyman* v. *Babcock, supra,* p. 369.) Process called an "order of sale," which included the essential provisions of the judgment, also was validly employed. (*Heyman* v. *Babcock, supra,* p. 369, and see concurring opinions, pp. 370-371.) In apparent recognition of both practices the clerk was authorized to collect a fee "[f]or issuing every copy of decree or order of sale of mortgaged property." (Stats. 1869-1870, ch. 144.)

In 1874, the Legislature changed the procedure. At that time section 684 of the Code of Civil Procedure was amended to provide that "when the judgment requires the sale of property the same may be enforced by a writ reciting such judgment, or the material parts thereof, and directing the proper officer to execute the judgment by making the sale and applying the proceeds in conformity therewith." (*H. Newmark & Co.* v. *Chapman, supra,* 53 Cal. p. 559.) Despite the use of the permissive term "may," this court held that under the statute as amended, a writ of enforcement, or an order of sale as it is often denominated (*Hager* v. *Astorg,* 145 Cal. 548 [79 P. 68, 104 Am.St.Rep. 68]; 6 Bancroft's Code Practice and Remedies [1928] § 5061, p. 6625), is the only process which may be used for the enforcement of a judgment directing the sale of mortgaged property. (*Southern California Lbr. Co.* v. *Ocean Beach Hotel Co., supra,* 94 Cal. p. 220; *Newmark* v. *Chapman, supra,* 53 Cal. pp. 558-559; see *Hager* v. *Astorg, supra,* 145 Cal. p. 553.)

In *Newmark* v. *Chapman, supra,* "[t]he process under which the mortgaged property was sold was only a copy of the judgment issued and attested by the Clerk. It did not conform to secs. 682 and 684 of the Code of Civil Procedure, as it did not purport to have been issued in the name of the People, nor was it directed to the Sheriff, nor did it direct him to execute the judgment." (P. 558.) The court noted that "[t]he judgment itself directed the Sheriff to do all that process, issued in the most formal and regular manner, could have directed him to do," (p. 559) but held that a sale made without the authority of further process was erroneous, but not void. That conclusion was reaffirmed in *Hager* v. *Astrog, supra.* In 1907 the Legislature authorized the clerk to collect a fee "[f]or issuing an execution or order of sale in any action." (Stats. 1907, ch. 282, p. 549.) At the present time, the statute reads: "The fee for issuing an order of sale is

two dollars." (Gov. Code, § 26829.) Clearly, this enactment and section 684 of the Code of Civil Procedure set up the procedure which must be followed to enforce a judgment which requires the sale of specific property. Without a writ of enforcement or order of sale, whichever it may be called, the sheriff or appointed commissioner has no authority to execute the judgment.

The final question, which is decisive of the present controversy, concerns the effect of a sale conducted pursuant to a writ of enforcement issued more than five years after the entry of judgment, and without compliance with the procedure prescribed by section 685 of the Code of Civil Procedure. Mrs. Cowan's position is that the sale is void and confers no title. Laubisch argues that it is voidable only, subject to being set aside by the court upon motion or in a proceeding in equity timely instituted.

At common law, although a judgment was valid for 20 years, execution could not regularly issue after a year and a day from its entry. (Freeman on Void Judicial Sales [4th ed.]. § 24, p. 97.) Thereafter, it had to be revived by a procedure known as *scire facias*. An execution issued after a year and a day without revival by *scire facias* was voidable, but not void, and there could be no collateral attack even by the judgment debtor. (1 Freeman on Executions, *supra*, § 29, p. 104.) California abolished the writ of *scire facias* in 1872. (Code Civ. Proc., § 802.) A creditor is entitled to execution as a matter of right within five years from the entry of judgment. (Code Civ. Proc., § 681.) And until 1933 the court could make an order for the issuance of execution upon *ex parte* application without notice to the judgment debtor. (*Harrier* v. *Bassford,* 145 Cal. 529, 532 [78 P. 1038].)

 In 1933, section 685 of the Code of Civil Procedure was amended to allow the issuance of execution after the expiration of five years from the entry of judgment "by leave of the court, upon motion, and after due notice to the judgment debtor." "[T]he principal object of the new enactment was to place upon a creditor seeking to enforce a judgment more than five years after its entry, the burden of showing why he was not able to satisfy his claim within the statutory period during which he is entitled to an execution as a matter of right." (*Butcher* v. *Brouwer,* 21 Cal.2d 354, 358 [132 P.2d 205].)

In *Da Arauje* v. *Rodriques,* 50 Cal.App.2d 425 [123 P.2d 154], a suit to quiet title, the defendant had in a prior action

recovered judgment against the plaintiff. More than five years after the entry of judgment, and without a motion having been made or any affidavit filed, a writ of execution was issued and the sheriff sold the property levied upon to the defendant. Thereafter, the plaintiff sued to quiet title. It was held that the procedure in this state is not a substitute for *scire facias* and, after the lapse of the five-year period, a sale is invalid if it is based upon a writ of execution obtained without leave of court upon notice and motion.

The ground of the Da Arauje decision is that the procedure now prescribed by section 685 allows the judgment debtor to defeat enforcement of the judgment by showing his creditor's lack of diligence in proceeding against him or some other equitable ground for denying the creditor relief. "It is reasonable to conclude," said the court, "that in requiring the giving of notice to the judgment debtor in all such cases the legislature intended to enact a jurisdictional requirement. . . . To hold that the requirement of notice is procedural but not jurisdictional would be to emasculate by judicial construction an amendment whose sole purpose is clear, that no judgment barred by limitation should be enforced against a judgment debtor without first giving him an opportunity to be heard." (50 Cal.App.2d 431.) This conclusion was followed in *Castle* v. *Castle*, 71 Cal.App.2d 323, 324 [162 P.2d 656].

Laubisch seeks to draw a distinction between an invalid writ of enforcement and a defective writ of execution. Relying upon *Southern California Lbr. Co.* v. *Ocean Beach Hotel Co., supra,* 94 Cal. 217, he argues that a writ of execution followed by a levy is necessary to authorize the sheriff to proceed against property of the judgment debtor when only a money judgment is involved. But a decree of foreclosure, it is said, affects the property itself, and the court has jurisdiction to enforce the decree when the property already has been taken into its custody.

The Southern California Lumber Company case involved a sale to foreclose a mechanic's lien conducted within five years from the entry of the decree but after the return date of the writ of enforcement. The court analogized the situation to that where a levy has been made under a writ of execution and held the return date of the writ to be decisive of jurisdiction only as to the levy but not as to a sale. Otherwise stated, a sale made pursuant to a writ of enforcement after the return date of the writ has no jurisdictional defect.

But it was recognized that the authority of the officer to conduct a sale is dependent upon an enforceable judgment, and "in making the sale, [he] is only executing the directions of the court." ▮ Whether the judgment be one for money or ordering the sale of property, it must be "enforced or carried into execution after the lapse of five years from the date of its entry, by leave of the court, upon motion, and after due notice to the judgment debtor." (Code Civ. Proc., § 685.) The requirements of that section are jurisdictional, and a writ issued without compliance with it confers no authority upon the officer to conduct a sale.

As the writ of enforcement upon which the purported sale made to Laubisch was not timely issued he obtained no title. This conclusion makes unnecessary the discussion of other contentions made by Mrs. Cowan.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.