[No. S033224. Sept. 2, 1994.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION et al., Plaintiffs and Respondents, v.
GOVERNING BOARD OF THE MARIN COMMUNITY COLLEGE DISTRICT, Defendant and Appellant.

---

**COUNSEL**

School and College Legal Services, Robert J. Henry, Joseph C. Kinkade and Patrick K. Rafferty for Defendant and Appellant.

Janet G. McCormick, Fekete, Carton, Hartsell, Grass, Ronich, Peters & Inman, Frank J. Fekete, Liebert, Cassidy & Frierson, Larry J. Frierson, Peter J. Brown, Atkinson, Andelson, Loya, Ruud & Romo and Warren S. Kinsler as Amici Curiae on behalf of Defendant and Appellant.

Margie Valdez and Madalyn J. Frazzini for Plaintiffs and Respondents.

Thomas F. Casey III, County Counsel (San Mateo), Lillian Lee Port, Chief Deputy County Counsel, Terri A. Tucker, Beverly Tucker, Charles A. Gustafson, Rosalind D. Wolf, Robert E. Lindquist, Carroll, Burdick & McDonough, Christopher D. Burdick and Alison Berry-Wilkinson as Amici Curiae on behalf of Plaintiffs and Respondents.

---

**OPINION**

**LUCAS, C. J.**—Classified employees of the state's community colleges are entitled to the paid holidays enumerated in Education Code section 88203,

including "every day appointed by the President, or the Governor of this state . . . for a public fast, thanksgiving or holiday . . . ." We must decide whether President George Bush "appointed" days of thanksgiving, within the meaning of the Education Code, when, at the conclusion of the Persian Gulf War, he proclaimed April 5, 6, and 7, 1991, as "National Days of Thanksgiving." As we explain, we conclude that the President's proclamation did not entitle community college classified employees to holiday compensation for those days. We therefore reverse the judgment of the Court of Appeal.

I.

Following the end of hostilities in the Persian Gulf region, President Bush issued Presidential Proclamation No. 6257, entitled, "For National Days of Thanksgiving, April 5-7, 1991." (Pres.Proc. No. 6257, 56 Fed.Reg. 10353 (Mar. 7, 1991), 1991 U.S. Code Cong. & Admin. News, p. A26 [hereafter Proclamation 6257].) In relevant part, the proclamation states: ". . . I, GEORGE BUSH, President of the United States of America, do hereby proclaim April 5-7, 1991, as National Days of Thanksgiving. I ask that Americans gather in homes and places of worship to give thanks to Almighty God for the liberation of Kuwait, for the blessings of peace and liberty, for our troops, our families, and our Nation. In addition, I direct that the flag of the United States be flown on all government buildings, I urge all Americans to display the flag, and I ask that bells across the country be set ringing at 3:00 p.m. (eastern daylight savings time) on April 7, 1991, in celebration of the liberation of Kuwait and the end of hostilities in the Persian Gulf." (*Id.* at p. A27.)

Respondent California School Employees Association (hereafter CSEA) is the exclusive representative of a bargaining unit of classified personnel employed by appellant Governing Board of the Marin Community College District (hereafter the District). CSEA sent the District a letter dated April 4, 1991, calling on the District to recognize April 5, 6, and 7, 1991, as paid holidays for the classified employees represented by CSEA, and to compensate the employees accordingly. The District denied CSEA's demand by letter dated April 5, 1991.

After the District's refusal to comply with CSEA's demand for holiday compensation, CSEA successfully petitioned in the Marin County Superior Court for a writ of mandate. The court ordered the District to recognize the

thanksgiving days designated in Proclamation 6257 as paid holidays pursuant to Education Code section 88203,[1] and to compensate classified employees accordingly.[2]

The Court of Appeal affirmed the judgment, reasoning that, for purposes of the holiday statute, the President's "proclaiming" days of thanksgiving was the functional equivalent of his "appointing" them. The court thus concluded that the issuance of Proclamation 6257, designating April 5, 6, and 7 as "National Days of Thanksgiving," resulted in paid holidays for the college's classified employees.

We granted review of this issue.[3] As will appear, we disagree with the Court of Appeal's analysis.

## II.

Section 88203 entitles classified employees[4] of the community colleges[5] to holiday compensation on nine specified annual holidays. Section 79020 provides that the community colleges shall close on the same nine designated holidays, with the addition of "Dr. Martin Luther King, Jr. Day." (§ 79020, subd. (a).) Although the President has no authority to declare a paid holiday for the state's public school employees, or to order the closure

[1]All further statutory references are to this code unless otherwise noted.

[2]When an employee is required to work on a holiday, he or she is given monetary compensation or compensating time off. The choice appears to be that of the governing board. (§ 88203.)

[3]We declined the District's request to review the Court of Appeal's conclusion that Proclamation 6257 did not conflict with federal and state constitutional guarantees respecting an establishment of religion, even though the presidential decree included religious references and the request for prayer. (U.S. Const., 1st Amend.; Cal. Const., art. I, § 4.) Because this issue is mooted by our disposition here, we express no opinion concerning the Court of Appeal's resolution of the constitutional question.

[4]The Education Code defines a classified position by describing what it is not. Thus, "[e]very position not defined by the regulations of the board of governors as an academic position and not specifically exempted from the classified service according to the provisions of Section 88003 or 88076 shall be classified as required by those sections and shall be a part of the classified service." (§ 88004.) An " '[a]cademic position' includes every type of service, excluding paraprofessional service, for which minimum qualifications have been established by the board of governors pursuant to Section 87356." (§ 87001, subd. (b).) Teachers, librarians, and counselors are examples of those in academic positions. Secretaries, maintenance workers, and food service personnel are those who are considered classified employees under the statutory scheme.

[5]Our decision in this case resolves similar disputes that have arisen under section 45203, providing for holiday pay for classified employees in the elementary and high school districts, and containing the same operative language as the statutes at issue here. (See Legis. Counsel's Dig., Assem. Bill No. 3100, 4 Stats. 1976 (Reg. Sess.) Summary Dig., p. 263 [code now "provide[s] for the separate grouping of provisions related to: (1) all levels of education in general, (2) education in public elementary and high schools, and (3) postsecondary education"].)

of the state's public schools, the Legislature has mandated that legal significance shall attach to the designation of certain special, nonrecurring days by the federal executive. Thus, in addition to the recurring paid holidays, sections 88203 and 79020 also provide for holiday compensation and college closure, respectively, on any days "appointed" by the President (or the Governor) for a public fast, thanksgiving or holiday. (§§ 88203, 79020, subds. (c) & (d).) To decide whether, by issuing Proclamation 6257, the President "appointed" days of thanksgiving entitling classified employees to paid holidays, we must first determine the nature of the presidential action necessary to trigger the applicable statutory provisions.

In examining sections 88203 and 79020 for this purpose, we are guided by the well-established principle that our function is to "ascertain the intent of the lawmakers so as to effectuate the purpose of the law." (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420], citing *People* v. *Craft* (1986) 41 Cal.3d 554, 559 [224 Cal.Rptr. 626, 715 P.2d 585].) We determine such intent by first focusing on the words used by the Legislature, giving them their ordinary meaning. (*Mercer* v. *Department of Motor Vehicles* (1991) 53 Cal.3d 753, 763 [280 Cal.Rptr. 745, 809 P.2d 404].) This is because "it is the language of the statute itself that has successfully braved the legislative gauntlet." (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238 [8 Cal.Rptr.2d 298].)

The term "appointed" in sections 88203 and 79020 is not defined in the Education Code, and there are no California cases construing it. As it is used in the statutes here, the term "appoint" is commonly understood as meaning "to fix by a decree, order, command, resolve, decision, or mutual agreement; . . . to fix the time and place of." (Webster's New Internat. Dict. (3d ed. 1981) p. 105.)

■ The District argues that, as used in the statutes at issue here, the term "appoint" is uncertain and therefore in need of judicial construction to determine its meaning. This is so, according to the District, because the statutes give legal significance not only to "every day *appointed* by the President for a public fast, thanksgiving or holiday" but also to "that Thursday in November *proclaimed* by the President as 'Thanksgiving Day.'" (§ 88203, italics added.) In the District's view, the Legislature intended a meaningful distinction between the type of presidential action necessary to trigger an entitlement to holiday compensation for Thanksgiving Day, i.e., the issuance of a presidential proclamation, and that required for a presidentially appointed day of thanksgiving.

We discern no ambiguity in the Legislature's use of the word "appoint." Like the term "proclaim," the ordinary meaning of which is "to declare

solemnly, officially or formally" (see Webster's New Internat. Dict., *supra*, at p. 1808), the use of the word "appoint" emphasizes the solemnity and formality of the presidential action necessary to create a holiday.

 Under the plain language of section 88203, a presidential decree designating a certain day or days as "day[s]" of "thanksgiving" would trigger an entitlement to a paid holiday for community college employees. A review of the presidential proclamations issued over the past 50 years reveals that relatively few have actually designated thanksgiving days. Of these proclamations, the overwhelming majority were ceremoniously issued by the President in connection with the annual Thanksgiving Day holiday, a holiday fixed as the fourth Thursday in November by congressional directive on December 26, 1941. (See Stokes & Pfeffer, Church and State in the United States (rev. 1st ed. 1964) at p. 503.) There have been four presidential proclamations naming "day[s]" of "thanksgiving" that bore no relation to the annual Thanksgiving Day holiday, including the proclamation at issue here.[6]

Likewise, a literal interpretation of the statute would give *no* entitlement to holiday pay for those days designated by the President as something other than a day of thanksgiving. Thus, a "National Day of Prayer" proclaimed in Presidential Proclamation No. 6409 in which President Bush "urge[d] . . . Americans to . . . pray . . . in thanksgiving" (Pres.Proc. No. 6409, 57 Fed.Reg. 8395 (Mar. 5, 1992), 1992 U.S. Code Cong. & Admin. News, p. A18) would not result in a paid holiday, falling outside the literal language of section 88203 because it designated a "day of prayer" rather than a "day of thanksgiving." (See also "D-Day Remembrance Day," Pres.Proc. No. 6697, 59 Fed.Reg. 28463 (May 30, 1994), 1994 U.S. Code Cong. & Admin. News, p. A68 [a " 'grateful Nation remembers' "].)

The statute, literally interpreted, provides holiday pay entitlement only when the President happens to choose the word "thanksgiving" rather than one of the other words sometimes used to express the same presidential

---

[6](Proc. 6257, 56 Fed.Reg. 10353, *supra*, 1991 U.S. Code Cong. & Admin. News at p. A26 ["I . . . do hereby proclaim April 5-7, 1991, as National Days of Thanksgiving"; occasion for thanksgiving was the Persian Gulf War victory and the liberation of Kuwait]; Pres.Proc. No. 5936, 54 Fed.Reg. 3575 (Jan. 20, 1989), 1989 U.S. Code Cong. & Admin. News, p. A3 ["I . . . do hereby proclaim January 22, 1989, a National Day of Prayer and Thanksgiving"; occasion for thanksgiving was the American Bicentennial Presidential Inaugural of President Bush]; Pres.Proc. No. 4181, 38 Fed.Reg. 2737 (Jan. 26, 1973), 1973 U.S. Code Cong. & Admin. News, p. 3384 ["I . . . do hereby designate . . . the 24-hour period beginning [7:00 p.m., e.s.t., Jan. 27, 1973] as a National Day of Prayer and Thanksgiving"; occasion for thanksgiving was the end of the Vietnam War]; Pres.Proc. No. 3979, 35 Fed.Reg. 6309 (Apr. 17, 1970), 1970 U.S. Code Cong. & Admin. News, p. 6166 ["I . . . do hereby designate Sunday, April 19, 1970, as a National Day of Prayer and Thanksgiving"; occasion for thanksgiving was the safe return of the astronauts aboard the damaged Apollo 13 spacecraft].)

directive, such as prayer or remembrance. It is doubtful, however, that the Legislature intended the operation of section 88203 to turn on such fine semantic distinctions.

Focusing solely on the President's exact choice of words might be appropriate if the Legislature had believed the President knew, and intended, that the precise words he chose would have particular legal consequences in California. There is, however, no basis for such a view. Indeed, a review of the holiday statutes of other states shows a wide variety of terms used to give state legal significance to the President's designation of holidays. (See, e.g., Hawaii Rev. Stat. § 8-1 [any day designated by proclamation by the President as holiday]; Ohio Rev. Code Ann. § 124.19 [any day appointed and recommended by the President]; Okla. Stat. tit. 25, § 82.2 [such other days as may be designated by the President]; Ore. Rev. Stat. § 187.020 [every day appointed by the President as day of mourning, rejoicing or other special observance].)

Because there is no reason to believe that the President is aware of the legal consequences that attach to his use of certain words under the various state statutes, there appears to be no correlation between the particular words the President uses and his intention to designate a day of nationwide significance. Consequently, a literal interpretation of the statute produces the absurd result that a paid holiday is recognized not because of the President's designation of a day of nationwide significance, but rather, through a semantic lottery of sorts in which the determinative factor is that the winning words (in this case, "day" of "thanksgiving") appear in the President's proclamation.

Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction. (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744].) Nonetheless, a court may determine whether the literal meaning of a statute comports with its purpose. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) We need not follow the plain meaning of a statute when to do so would "frustrate[] the manifest purposes of the legislation as a whole or [lead] to absurd results." (*People v. Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473]; accord, *Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1098 [282 Cal.Rptr. 841, 811 P.2d 1025]; see also *People v. Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr.2d 278, 856 P.2d 1134]; *Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].) As we shall explain, the legislative purpose underlying sections 88203 and 79020 is effectuated not by a literal interpretation of the statutory language, but rather, by construing the statutory language in order to avoid capricious results unintended by the Legislature.

Section 88203's provision for holiday compensation on days appointed by the President for public fast, thanksgiving or holiday has existed unchanged since the 1963 enactment of its predecessor, section 13656. (Stats. 1963, ch. 96, § 1, p. 728.) Section 79020's related mandate that public schools be closed on executive-appointed thanksgiving days originally appeared in the year 1911, when that provision became part of both former Political Code section 10 (now Gov. Code, § 6700) and Civil Code former section 7. (Stats. 1911, ch. 321, § 1, pp. 520-521; Stats. 1911, ch. 320, § 1, p. 521.) Borrowing from the existing list of holidays in former Political Code section 10, the Legislature in 1911 decreed that schools shall close "on every day appointed by the president of the United States or the governor of this state for a public fast, thanksgiving or holiday." (*Ibid.*) The provision for the presidential appointment of holidays was part of both former Political Code section 10 and Civil Code section 7 as originally enacted in 1872, and derives verbatim from the Field Code. (See historical derivation, Deering's Ann. Civ. Code (1990 ed.) § 7, p. 14.) The relevant portion of the Field's Draft itself (Field's Draft N.Y. Civ. Code, § 2017) contains no commentary pertaining to the presidential appointment of holidays.

Although the legislative history does not suggest any express legislative purpose behind the provision for holiday compensation and school closure on presidentially appointed days of public fast, thanksgiving, or holiday, the probable purpose of the provisions at issue here is to provide a mechanism whereby those connected with the state's community colleges could join the rest of the nation in observing special, nonrecurring days contemplated by the President as national holidays. As previously noted, sections 88203 and 79020 entitle classified employees to holiday compensation and provide for school closure, respectively, on certain designated annual holidays, and any additional nonrecurring days "appointed" by the President or the Governor.

Under the statutory interpretation urged by CSEA and accepted by the Court of Appeal in its opinion, the issuance of a presidential proclamation designating days of thanksgiving automatically triggers school closure and an entitlement to holiday compensation. As discussed previously, we reject a literal interpretation of the statutes because focusing exclusively on the President's fortuitous choice of words would lead to capricious results that the Legislature could not have intended. Because the "language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend" (*People* v. *Barksdale* (1972) 8 Cal.3d 320, 334 [105 Cal.Rptr. 1, 503 P.2d 257]), our task becomes to determine a more reasonable interpretation consistent with the apparent intent of the framers and effectuating the statute's purpose. (Cf. *Provigo Corp.* v. *Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561, 567

[28 Cal.Rptr.2d 638, 869 P.2d 1163]; *Younger* v. *Superior Court, supra,* 21 Cal.3d at pp. 113-114.)

We noted earlier the probable narrow purpose of the provisions at issue here as providing a mechanism whereby those connected with the state's community colleges could join the rest of the nation in observing those special, nonrecurring days contemplated by the President as national holidays. To effectuate this purpose, we hold that in order for the "appointment" of a holiday to occur, the President must not merely proclaim that a certain period of time be given over to thanksgiving, public fast, or holiday, but rather, must disclose an intent that such days be treated as a special national holiday. We believe that such a construction avoids the capriciousness of a statutory interpretation under which entitlement to a paid holiday is triggered by the President's fortuitous choice of one set of words over another. (Cf. *Provigo Corp.* v. *Alcoholic Beverage Control Appeals Bd., supra,* 7 Cal.4th at p. 567 [literal language of constitutional provision construed to avoid absurdity].)

### III.

To determine whether the "appointment" of a holiday has occurred within the meaning of the Education Code, and more specifically, whether the President's proclamation contemplated a special national holiday, we must first inquire whether the President has declared a corresponding *federal* holiday. This threshold requirement will clearly distinguish at the outset those presidential proclamations of a purely ceremonial character from those that were intended to designate a national holiday. It also avoids the anomalous situation created in this case, in which a presidential proclamation designating "National Days of Thanksgiving" is asserted to be the source of a paid holiday for California's classified employees but which did not declare or result in a holiday for federal employees.

Interpreting the statutes as requiring the declaration of a corresponding federal holiday is fully consistent with our previous construction of the language in Government Code section 6700, subdivision (n), designating as holidays in the state "[e]very day appointed by the President or Governor for a public fast, thanksgiving or holiday." In *Laubisch* v. *Roberdo* (1954) 43 Cal.2d 702, 710 [277 P.2d 9], we considered whether certain days were "holidays" appointed by the President for purposes of Code of Civil Procedure section 12a, which extends the time to bring an action to foreclose a mechanic's lien. (43 Cal.2d at p. 709.) Noting that the purpose of section 12a was "to give persons required by law to perform an act within a certain period an extension of time equal to the number of intervening holidays which deprived them of access to public offices or institutions for the

transaction of business" (43 Cal.2d at p. 710), our construction of the word "holiday" in that case necessarily contemplated a day on which government offices would be closed.

Even if the requirement of a corresponding federal holiday is satisfied, however, the issue whether the President's proclamation contemplated a national holiday is not necessarily resolved. The intent to designate a national holiday must also be apparent in the language of the proclamation, executive order, or other official announcement itself. (Cf. *Capitol City Lodge No. 74, FOP* v. *City of Huntington* (1988) 180 W.Va. 159 [375 S.E.2d 791, 794] [governor's intention to recommend day of thanksgiving reflected by language of memorandum in its entirety].) In particular, we must examine the words and the tone of the President's entire announcement, and the manner in which the President directs or recommends that the designated day be observed. It is appropriate to consider the language of the President's proclamation or similar announcement, because from such an official decree the Legislature intended legal significance to arise. (See *Laubisch* v. *Roberdo, supra,* 43 Cal.2d at p. 710 [examination of presidential proclamation and executive orders]; *Vidal* v. *Backs* (1933) 218 Cal. 99, 101, 105 [21 P.2d 952, 86 A.L.R. 1134] [presidential proclamation]; see also *Schmidt* v. *Christ* (1973) 75 Misc.2d 947 [348 N.Y.S.2d. 473] [same].)

In determining whether the President contemplated a special national holiday, courts should compare the language of other presidential proclamations and orders with that of the proclamation in question. Such comparisons should provide a benchmark against which to gauge a proclamation's potential for holiday status under the statutes.

Of course, a determination that the President did not contemplate a national holiday does not necessarily foreclose an entitlement to holiday compensation or school closure if the *Governor* exercises statutory authority to appoint a holiday. (See *Mandel* v. *Hodges* (1976) 54 Cal.App.3d 596, 607 [127 Cal.Rptr. 244, 90 A.L.R.3d 728] [Legislature vested Governor with statutory power to declare given day " 'appointed . . . for a public . . . holiday,' " making the day a holiday under various provisions of the Government Code].) The point is illustrated by our disposition in *Laubisch* v. *Roberdo, supra,* 43 Cal.2d 702. In that case, we determined that state holidays did not arise from President Truman's designation of August 15 and 16, 1945, as "V-J Day," because those days were not " 'set apart' " as holidays within the meaning of Government Code section 6700, subdivision (n). (43 Cal.2d at p. 710.) Nonetheless, we found a holiday was created when California's Acting Governor Houser proclaimed August 15, 1945, " 'to be a legal holiday in the State of California . . . .' " (*Ibid.*; see also *Stanislaus Lumber Co.* v. *Pike* (1942) 51 Cal.App.2d 54, 56 [124 P.2d 190] [Governor's

proclamation designating July 3 as state holiday created holiday within meaning of former Political Code section 10 (predecessor to Gov. Code, § 6700, subd. (n))].)

## IV.

Applying the standard set forth above for determining whether a holiday has been "appointed" within the meaning of sections 88203 and 79020, we conclude that an entitlement to holiday compensation did not arise as a result of President Bush's proclaiming April 5, 6, and 7, 1991, as national days of thanksgiving. President Bush did not declare a federal holiday in connection with the national days of thanksgiving. Federal employees did not receive a paid holiday, and federal courts and offices remained open on April 5, 1991. (See Roderick, *Surprise! It's a Paid Day Off for Lucky Few*, L.A. Times (Apr. 5, 1991) p. 3, col. 1.) Because we have determined that the creation of a corresponding federal holiday is a prerequisite to finding that the President contemplated a national holiday, and because this requirement was not satisfied, the appointment of a holiday did not occur within the meaning of the statutes. We note additionally that the Governor did not exercise statutory authority to declare a holiday. In California, state offices were open, state employees reported to work as usual and no additional holiday compensation was awarded. (*Ibid.*; see also Johnson, *Yesterday's Gulf Thanksgiving Holiday Confused a Lot of People*, S.F. Chronicle (Apr. 6, 1991) p. A5.)

Even if the President had declared a federal holiday, however, neither the language nor the tone of Proclamation 6257, taken as a whole, indicates that the President contemplated April 5 to 7, 1991, as anything more than a national ceremonial commemoration. The proclamation is essentially a prayer, acknowledging the end of the armed conflict in the Persian Gulf in sweeping, religious terms. It speaks in broad, general language of "unit[ing] in thanksgiving to Almighty God" and "pray[ing] for God's help and guidance on the way that lies ahead." (Pres. Proc. 6257, 56 Fed.Reg. 10353, *supra*, 1991 U.S. Code Cong. & Admin. News, at p. A26.) To observe the designated days of thanksgiving, the President asks that "Americans gather in homes and places of worship to give thanks . . ." and "that bells across the country be set ringing" at a specific hour. (*Id.*, at p. A27.) He also directs that the nation's flag be flown from all government buildings. It is difficult to view such requests as anything more than the traditional commemoration of a noteworthy national event.

Moreover, in his proclamation, the President specifically asks that Americans gather in homes and places of worship on April 5-7, 1991, a Friday, Saturday, and Sunday. These are so-called sabbath days for the major

Western religions, days when most Americans who worship on a weekly basis would normally do so. The President's request thus appears to contemplate that Americans will incorporate the days of thanksgiving into their usual spiritual practices, and tends to confirm the ceremonial nature of his call for observance.

A comparison with the proclamation issued by President Richard Nixon concerning the Apollo moon landing in 1969 is instructive.[7] (Pres.Proc. No. 3919, 34 Fed.Reg. 12079 (July 18, 1969), 1969 U.S. Code Cong. & Admin. News, p. 2817.) After designating Monday, July 21, 1969, to be a "National Day of Participation," the President "invited[d] the Governors of the States . . . to issue similar proclamations." (*Id.* at p. 2818.) In addition to directing that the flag of the United States be displayed on all public buildings, he expressly ordered all federal agencies closed, with the exception of those relating to national security, and excused employees from duty on that day. Accounting for the fact that many states do not give legal effect to the appointment of holidays by the President, he "urge[d] the Governors of the States, the mayors of cities, the heads of school systems, and other public officials to take similar action." (*Ibid.*) Private employers were also encouraged to "make appropriate arrangements so that as many of our citizens as possible will be able to share in the significant events of that day." (*Ibid.*)

An examination of two other presidential proclamations, specifically, Presidential Proclamation No. 5936 for a "National Day of Prayer and Thanksgiving, 1989" (Pres.Proc. No. 5936, 54 Fed.Reg. 3575, *supra*, 1989 U.S. Code Cong. & Admin. News at p. A3) and Presidential Proclamation No. 6409 for a "National Day of Prayer, 1992" (Pres.Proc. No. 6409, 57 Fed.Reg. 8395, *supra*, 1992 U.S. Code Cong. & Admin. News at p. A18), offers a comparison from the other end of the spectrum. These are but two recent examples of the many proclamations calling for a day of prayer that have been issued annually by the President since 1952. (See *id.* at p. A19.) In neither situation was a federal holiday declared. Moreover, the language of these two proclamations is nearly identical to that of Proclamation 6257 in which President Bush called upon citizens to "gather in homes and places of worship to give thanks to Almighty God." (Proc. 6257, *supra*, 56 Fed.Reg. 10353, 1991 U.S. Code Cong. & Admin. News at p. A27.) The strictly ceremonial nature of these and other national day of prayer proclamations is evident, and to our knowledge none of them has resulted in an entitlement to

---

[7] In response to President Nixon's proclamation, Acting Governor Ed Reinecke issued his own proclamation, declaring a day of national participation to be observed in California "by all public schools and colleges . . . ." (Proclamation by Acting Governor, filed with Secretary of State, July 17, 1969.) The schools closed, and, after confusion surrounding the computation of average daily attendance was resolved in the Legislature (Stats. 1969, ch. 1391, § 2 p. 2835), school employees received holiday compensation for that day.

holiday compensation or school closure pursuant to section 88203 or 79020, or has been given effect under any other holiday statute. Their similarity in language to the proclamation at issue here is further indication that Proclamation 6257 should be accorded similar status.

CSEA draws our attention to the fact that, responding to a request of the Administrative Office of the Courts, the Attorney General concluded in an opinion letter that Proclamation 6257 constituted the appointment of a day of thanksgiving pursuant to California's general holiday statute, Government Code section 6700, subdivision (n). Thereafter, the Chief Justice of California declared April 5, 1991, as a judicial holiday, closing all California trial courts for the transaction of judicial business on that day. Judicial employees were required to report to work on that day, however, and were not entitled to holiday compensation. We have reviewed the foregoing opinion and are not convinced by its analysis. Although the closure of the courts is not irrelevant to our inquiry, neither is it controlling.

At the time Proclamation 6257 was issued, its legal significance was far from clear and much confusion resulted. According to CSEA, in a survey of 282 California public school employers conducted by CSEA, many employers recognized the days of thanksgiving designated by Proclamation 6257, at least in part, and provided employees with compensating time off. Others refused to do so. The fact that the state courts were closed in response to Proclamation 6257 is more a reflection of the confusion that surrounded the President's decree than support for CSEA's position herein.

## V.

For all the reasons set forth above, we conclude that for the presidential appointment of a holiday to occur, within the meaning of sections 88203 and 79020, it must be shown that the President's proclamation contemplated a national holiday. As a threshold matter, the President must declare a corresponding federal holiday. Beyond this requirement, the language and tone of the proclamation must demonstrate the President's intent to designate a national holiday.

In conjunction with his proclamation of "National Days of Thanksgiving," President Bush did not declare a corresponding federal holiday. Thus, under the Education Code, no holiday was "appointed." Furthermore, there is no indication in the language of the proclamation itself that the "National Days of Thanksgiving" were intended as anything more than a ceremonial commemoration. We conclude that the issuance of Proclamation 6257 did not result in the appointment of holidays and that, therefore, employees of the

community colleges are not entitled to holiday compensation for having worked on those days.[8]

The judgment of the Court of Appeal is reversed and the case remanded to that court with directions to vacate the writ of mandate in CSEA's favor.

Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.

**KENNARD, J.**—I dissent.

This case calls for the straightforward application of an unambiguous statute. In language that could hardly be clearer, Education Code section 88203 creates a paid holiday for secretaries, janitors, cafeteria workers, and other community college employees in nonacademic positions on "every day appointed by the President . . . for a public fast, thanksgiving or holiday." Only a lawyer would doubt that President Bush appointed days of thanksgiving within the meaning of section 88203 by his proclamation at the end of the Persian Gulf War that ". . . I, GEORGE BUSH, President of the United States of America, do hereby proclaim April 5-7, 1991, as National Days of Thanksgiving." (Pres.Proc. No. 6257, 56 Fed.Reg. 10353 (Mar. 7, 1991), 1991 U.S. Code Cong. & Admin. News, p. A26 [hereafter Proclamation 6257].)

The majority, however, shirks its duty to carry out the legislative intent revealed by the plain meaning of Education Code section 88203's words, concluding that secretaries, janitors and cafeteria workers are not entitled to receive a paid holiday unless the same holiday has first been granted to everyone else in society. Instead of applying the statute as written, the majority fabricates from whole cloth its "federal-holiday-plus-something-more-than-a-ceremonial-commemoration" test for determining when a presidentially appointed day of thanksgiving gives rise to a paid holiday. This is an uncertain, litigation-breeding test that substitutes a murky and artificial inquiry into the President's subjective intent for the statute's clearly delineated objective criteria for creating a paid holiday.

In taking away from community college workers the holidays granted them by the Legislature, the majority does not hesitate to portray our Presidents as creatures of caprice and to tear the word "thanksgiving" out of the statute enacted by the Legislature. Our Presidents and our Legislature deserve more respect than that.

In truth, Presidents do not designate days of thanksgiving fortuitously or capriciously. They exercise their power to name special days of thanksgiving

---

[8]In light of the rule we establish today, we need not address the District's argument that the Education Code contemplates that community colleges must close in order for classified employees to be entitled to holiday compensation pursuant to section 88203.

deliberately and very sparingly, having done so only four times in the past fifty years and only on occasions of national importance. In this case in particular, President Bush acted to commemorate an important and solemn occasion of the highest national significance by designating the Persian Gulf War days of thanksgiving at issue here. Indeed, the end of a war and the coming of peace is a most appropriate occasion in a nation's life for a day of thanksgiving.

Because Presidents designate days of thanksgiving very rarely and only on occasions of high national importance, there is nothing absurd about our Legislature's decision to condition the creation of a paid holiday solely upon the President's naming of a day as a "day of thanksgiving." Under the majority's test, however, no day named by a President as a "day of thanksgiving" would ever give rise to a paid holiday under Education Code section 88203, and that provision would be written out of the statute. The majority does more than delete the word "thanksgiving" from the statute, however; it also adds to the statute a subjective inquiry, never contemplated by the Legislature, into whether the President intended that the day or days he has proclaimed be something more than a ceremonial commemoration.

There is no basis for denying community college workers the holidays the Legislature has created for them simply because those holidays have not been granted to others as well. Because the majority's attempt to rewrite Education Code section 88203 both exceeds our powers and is completely unjustified, I dissent.

## FACTS

The California School Employees Association (hereafter CSEA) is the bargaining representative of "classified" community college employees of the Governing Board of the Marin Community College District (hereafter the District). "Classified" community college employees are those in nonacademic positions, such as secretaries, maintenance and custodial workers, and food service workers. (See Ed. Code, §§ 87001, 88004.)

After President Bush issued Proclamation 6257 naming April 5-7, 1991, as "National Days of Thanksgiving" for victory in the Persian Gulf War, CSEA requested the District to recognize that proclamation as "appointing" days of thanksgiving under Education Code section 88203 and to provide the requisite holiday compensation to its classified workers. The District denied CSEA's request, leading CSEA to successfully petition the Marin County Superior Court for a writ of mandate requiring the District to recognize the Persian Gulf War days of thanksgiving designated by President Bush as paid holidays under section 88203. The Court of Appeal affirmed the trial court's judgment. We then granted review.

The majority now reverses the carefully considered decisions of the trial court and the Court of Appeal in this case. It holds, instead, that for a presidential proclamation of a day of thanksgiving to trigger a paid holiday under Education Code section 88203, the proclamation must do more than designate a day or days of national thanksgiving. As a threshold, it must declare a federal employee holiday. (Maj. opn., *ante*, pp. 342, 346.) Additionally, the President's proclamation, in its "words," "tone," and manner of recommended observance must also disclose the President's intent that the day be something more than a ceremonial commemoration. (Maj. opn., *ante*, pp. 342-344, 346.) For the reasons stated below, I disagree, and see no need to judicially restrict the scope of section 88203 or to engage in such a difficult inquiry into presidential intent.

ANALYSIS

I. *Under the Plain Language of Education Code Section 88203, a Paid Holiday for Community College Employees in Nonacademic Positions Arises From the Presidential Proclamation Designating Days of Thanksgiving for the Persian Gulf War Victory*

Education Code section 88203 sets forth the paid holiday entitlement of classified community college employees in nonacademic positions.[1] The statute's first sentence identifies those holidays. It begins by listing annually recurring holidays to which those employees are entitled (e.g., New Year's Day), and then includes as holidays "every day appointed by the President, or the Governor of this state . . . for a public fast, thanksgiving or holiday . . . ."

As the majority agrees (maj. opn., *ante*, pp. 338-339), the plain meaning of "appoint" can be described as "to fix by a decree, order, command, resolve . . . ; to fix the time and place of." (Webster's New Internat. Dict. (3d ed. 1981) p. 105; see also Black's Law Dict. (6th ed. 1990) p. 99, col. 1 [defining "appoint" as "[t]o designate, choose, select, assign, ordain, prescribe, constitute, or nominate."].) A presidential proclamation in which the President uses the words "I do hereby proclaim [date] as a National Day of Thanksgiving" therefore "appoints" a day of thanksgiving within the plain language of section 88203, because it designates or fixes by command the time for a day of thanksgiving. Thus, under section 88203, a presidential

---

[1]Education Code section 88203 was enacted in 1976 (Stats. 1976, ch. 1010, § 2, p. 4438) as a recodification in part of Education Code former section 13656, originally enacted in 1963 (Stats. 1963, ch. 96, § 1, p. 728). See footnote 8, *post*, for a fuller discussion of section 88203's lineage. The 1976 enactment of Education Code section 88203 made no change to the provision relevant to this case, which is quoted in the text above. For the sake of clarity, I will use the term "section 88203" to refer both to section 88203 and its predecessor, section 13656.

proclamation that expressly denominates a specific day or days to be "day[s] of thanksgiving" triggers the creation of a paid holiday for classified community college employees.

The majority agrees that this is the meaning of the plain language of section 88203 but refuses to give any effect to it. (Maj. opn., *ante*, pp. 339, 340.) The majority's refusal to hold that when a presidential proclamation names a "day of thanksgiving" it creates a holiday under section 88203 is contrary to our decision 40 years ago in *Laubisch* v. *Roberdo* (1954) 43 Cal.2d 702, 710 [277 P.2d 9]. In *Laubisch*, this court broadly construed the same statutory language present here—"every day appointed by the President . . . for a public fast, thanksgiving, or holiday"—to include even presidential proclamations designating days that fell outside a "strict construction" of this language. (*Ibid.*)[2] In doing so, we held that the "common understanding" of these statutory terms should be applied in determining whether a day proclaimed by a President fell within them (43 Cal.2d at p. 710), something that the majority pointedly refuses to do in this case.

The phrase "every day appointed by the President . . . for a public fast, thanksgiving, or holiday" sets forth three different statutory categories of days that a President may appoint: days of public fast, days of thanksgiving, and days of holiday. In *Laubisch* v. *Roberdo, supra,* 43 Cal.2d at pages 709-710, we addressed the third statutory category, days of holiday, in considering whether President Truman's proclamation of a "day of mourning and prayer" upon the death of President Roosevelt (Pres.Proc. No. 2648, 3 C.F.R., 1943-1948 Comp. 53-54 (Apr. 13, 1945), 1945 U.S. Code Cong. Serv., p. 1179) was a "day appointed by the President . . . for a . . . holiday."[3]

President Truman's proclamation nowhere mentioned the term "holiday" (or public fast or thanksgiving for that matter), did not create a federal employee holiday, and contemplated nothing more than a national ceremonial commemoration, i.e., a national day of prayer for the dead President. (Pres.Proc. No. 2648, 3 C.F.R., 1943-1948 Comp. 53-54, *supra.*) Thus, this

---

[2]In *Laubisch* v. *Roberdo, supra,* the statutory language "every day appointed by the President . . . for a public fast, thanksgiving, or holiday," identical to that at issue here, appeared in Government Code section 6700 (discussed in greater detail in part III below).

[3]The operative language of Presidential Proclamation No. 2648 was as follows: "I, Harry S. Truman, President of the United States of America, do appoint Saturday next, April 14th, the day of the funeral service for the dead President, as a day of mourning and prayer throughout the United States. I earnestly recommend the people to assemble on that day in their respective places of divine worship, there to bow down in submission to the will of Almighty God, and to pay out of full hearts their homage of love and reverence to the memory of the great and good man whose death they mourn." (Pres.Proc. No. 2648, 3 C.F.R., 1943-1948 Comp. 53-54, *supra,* 1945 U.S. Code Cong. Serv., p. 1179.)

proclamation would have failed completely the "federal-holiday-plus-some-thing-more-than-a-ceremonial-commemoration" test created by the majority today. (See maj. opn., *ante*, p. 345 [discussing "[t]he strictly ceremonial nature of . . . national day of prayer proclamations"].) Yet, in *Laubisch* we construed the scope of the term "holiday" as used in the statutory phrase "day appointed by the President . . . for a . . . holiday" and concluded that President Truman's proclamation had appointed a holiday within the meaning of that phrase: "Although a strict construction of the Government Code [section 6700] would uphold the conclusion that the day was not a holiday, the common understanding of the word ['holiday'] as stated in *Vidal* v. *Backs* [(1933) 218 Cal. 99, 105 (21 P.2d 952, 86 A.L.R. 1134)] is to the contrary." (*Laubisch* v. *Roberdo*, *supra*, 43 Cal.2d at p. 710.)

Our broad construction of the statutory category "day appointed by the President . . . for a . . . holiday" in *Laubisch* according to its "common understanding" (*Laubisch* v. *Roberdo*, *supra*, 43 Cal.2d at p. 710) to include presidential proclamations that are outside a "strict construction" (*ibid.*) of that term (and that do not meet the majority's test of "federal-holiday-plus-something-more-than-a-ceremonial-commemoration") requires that the parallel statutory category "day appointed by the President . . . for . . . thanksgiving" receive a similar broad and commonsense construction here. Our holding in *Laubisch* cannot be reconciled with the majority's decision in this case to refuse to apply the "common understanding" (*ibid.*) of "day of thanksgiving" and to exclude presidential proclamations designating days that are within the literal scope of that category.

Thus, both the plain language of the statute and our prior construction in *Laubisch* of the same statutory language support my conclusion that the "National Days of Thanksgiving" designated by President Bush in Proclamation 6257 "appointed" days of thanksgiving, thereby resulting in a paid holiday under section 88203 for community college workers in nonacademic positions.

II. *Applying the Plain Language of Section 88203 Does Not Create an Absurd Result*

The majority attempts to justify its decision to ignore the plain language of section 88203 by asserting that Presidents are a capricious lot who cannot be trusted to use the words "day of thanksgiving" rationally, consistently, and circumspectly. The majority claims that it therefore would have been absurd for the Legislature to have conditioned a holiday upon the random and fortuitous event of a President proclaiming a day of thanksgiving. Both of these assertions are erroneous, and arise from the majority's failure to examine the history and usage of presidential proclamations.

Contrary to the majority, Presidents do not use the term "day of thanksgiving" carelessly, arbitrarily, indiscriminately, or inconsistently. Nor did President Bush do so in this case. Rather, the small number of proclamations naming special days of thanksgiving and the high and solemn occasions commemorated by those days of thanksgiving demonstrate that Presidents carefully select the occasions for which they proclaim days of thanksgiving. In particular, it is insupportable to characterize President Bush's designation of days of thanksgiving at the conclusion of the Persian Gulf War as a "capricious" and "fortuitous choice of words" resulting from a "semantic lottery" and designating days lacking in "nationwide significance." (See maj. opn., *ante*, pp. 340-341.)

Over the past 50 years, Presidents have issued more than 4,000 proclamations. During that 50-year period, only 4 presidential proclamations (including the proclamation at issue in this case), or one proclamation in a thousand, have named special days of thanksgiving.[4] These four presidential proclamations designated a total of six days as days of thanksgiving over the course of fifty years (an average of one day of thanksgiving every eight years). The occasions commemorated by these days of thanksgiving have been important and solemn events of the highest national character, and none more so than in the case of President Bush's Persian Gulf War days of national thanksgiving proclamation. Certainly, there can be no greater or higher reason for national thanksgiving than for the successful conclusion of a major war in which hundreds of thousands of Americans served under arms and for the peace that follows.

Recognizing the Persian Gulf War days of national thanksgiving as paid holidays for community college workers in nonacademic positions is entirely fitting and appropriate. In no way is it the absurd consequence of a fortuitous presidential act. It is an insult to those who served in the Persian Gulf War (including, we are informed by CSEA, at least 357 California classified school employees), and to President Bush, to characterize his proclamation

---

[4](Proc. 6257, 56 Fed.Reg. 10353, *supra*, 1991 U.S. Code Cong. & Admin. News, p. A26 [". . . I . . . do hereby proclaim April 5-7, 1991 as National Days of Thanksgiving"; occasion for thanksgiving was the Persian Gulf War victory and the liberation of Kuwait]; Pres.Proc. No. 5936, 54 Fed.Reg. 3575 (Jan. 20, 1989), 1989 U.S. Code Cong. & Admin. News, p. A3 ["I . . . do hereby proclaim January 22, 1989, a National Day of Prayer and Thanksgiving"; occasion for thanksgiving was the American Bicentennial Presidential Inaugural]; Pres.Proc. No. 4181, 38 Fed.Reg. 2737 (Jan. 26, 1973), 1973 U.S. Code Cong. & Admin. News, p. 3384 ["I . . . do hereby designate . . . the 24-hour period beginning [7:00 p.m., e.s.t., Jan. 27, 1973] as a National Day of Prayer and Thanksgiving"; occasion for thanksgiving was the end of the Vietnam War]; Pres.Proc. No. 3979, 35 Fed.Reg. 6309 (Apr. 17, 1970), 1970 U.S. Code Cong. & Admin. News, p. 6166 ["I . . . do hereby designate Sunday, April 19, 1970, as a National Day of Prayer and Thanksgiving"; occasion for thanksgiving was the safe return of the astronauts aboard the damaged Apollo 13 spacecraft].)

of days of national thanksgiving upon its conclusion as a random and capricious act.

The history of presidential proclamations also shows correspondingly that Presidents have carefully avoided using the term "day of thanksgiving" when proclaiming periods of observance for less significant occasions. Presidents designate many different periods of observance in the course of a single year without denominating them as days of thanksgiving. Instead, they typically designate the period by a name descriptive of the occasion giving rise to the proclamation and urge various forms of observance.[5] An example of this formula for designation adhered to by Presidents is: "Now, THEREFORE, I, RONALD REAGAN, President of the United States of America, do hereby proclaim July 25, 1987, as Clean Water Day. I call upon the people of the United States to observe this day with appropriate ceremonies and activities." (Pres.Proc. No. 5685, 52 Fed.Reg. 28237 (July 24, 1987), 1987 U.S. Code Cong. & Admin. News, p. 4146.) Because these proclamations do not purport to name or otherwise designate the day to be observed as a "day . . . for . . . thanksgiving," they are insufficient to trigger the application of section 88203. As this examination of the history of presidential proclamations shows, no absurdity arises if we simply apply the words of the statute and ask: Did the President denominate the day[s] in question as "day[s] of thanksgiving"?

Ultimately, it is the majority's "federal-holiday-plus-something-more-than-a-ceremonial-commemoration" test, and not the plain language of the statute, that gives rise to absurd consequences. Under the majority's test, *none* of the special "days of thanksgiving" expressly proclaimed by Presidents over the past 50 years in the 4 proclamations identified above would qualify under section 88203 as a "day appointed by the President . . . for . . . thanksgiving," because none of those "days of thanksgiving" was declared to be a federal employee holiday. Moreover, if the presidential days of thanksgiving for the victorious conclusion of the Persian Gulf War are too insignificant to amount to "day[s] appointed by the President . . . for . . . thanksgiving," it is difficult to imagine that *any* presidential proclamation of a day of thanksgiving would ever give rise to a holiday under section 88203. The words "day appointed by the President . . . for . . . thanksgiving" will become dead letters in the statute.

As pointed out earlier, section 88203 provides that paid holidays for classified community college workers arise from three separate and different

---

[5]Examples abound, and they range from the perennial, such as "Fire Prevention Week" (see, e.g., Pres.Proc. No. 2700, 11 Fed.Reg. 9729 (Sept. 3, 1946), 1946 U.S. Code Cong. Serv., p. 1740; Pres.Proc. No. 6601, 58 Fed.Reg. 51723 (Sept. 30, 1993), 1993 U.S. Code Cong. & Admin. News, pp. A115-A116), to the unique, such as "National Dairy Goat Awareness Week, 1987" (Pres.Proc. No. 5669, 52 Fed.Reg. 23537 (June 19, 1987), 1987 U.S. Code Cong. & Admin. News, p. A122).

statutory categories of days appointed by Presidents: days of public fast, days of thanksgiving, and holidays. The majority's test, however, requires that the President appoint a holiday for federal employees as a prerequisite for a paid holiday to arise under section 88203. Under the majority's test, therefore, paid holidays for classified community college workers will arise only from presidentially appointed *holidays*, and not from presidentially appointed days of fast or days of thanksgiving (the other two statutory categories). The majority has nullified the Legislature's designation of these two statutory categories and rendered them surplusage, contrary to our established rule of statutory construction that we should give effect to all parts of a statute. (See, e.g., *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323]; *J. R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 36-37 [160 Cal.Rptr. 710, 603 P.2d 1306].)

The majority does more than take the category of days of thanksgiving out of section 88203. The majority also adds to the statute the requirement that the President "must disclose an intent that such days be treated as a special national holiday" and must intend that the days be something "more than a ceremonial commemoration." (Maj. opn., *ante*, pp. 342, 346.) This addition to the statute, however, has no more basis than does the majority's subtraction of "thanksgiving" from the statute. The statute sets up an objective test: Did the President name a day as a "day of thanksgiving"? The majority substitutes a subjective test of presidential intent that will require a trial court to sift the "words," "tone," "language," and "manner" of recommended observance of the proclamation in question and to compare those factors to other presidential proclamations in order to decide what the President was thinking when he issued the proclamation in question. (Maj. opn., *ante*, pp. 342-344, 346.)

The only example the majority gives of a presidential proclamation that would meet its test (maj. opn., *ante*, p. 345), President Nixon's proclamation of a "National Day of Participation" in the Apollo 11 moon landing, further illustrates that the majority's test will recognize only presidentially appointed holidays, and not presidentially appointed days of thanksgiving as provided in section 88203. President Nixon's proclamation of a "National Day of Participation" is not a proclamation of a day of thanksgiving. That proclamation does not designate the "Day of Participation" as a day of thanksgiving and nowhere uses the word "thanksgiving." (Pres.Proc. No. 3919, 34 Fed.Reg. 12079 (July 18, 1969), 1969 U.S. Code Cong. & Admin.

News, p. 2817.) It is at most the proclamation of a holiday, not of a day of thanksgiving.[6]

What the majority characterizes as the random, capricious, and fortuitous nature of presidential proclamations of days of thanksgiving is really nothing more than the fact that they are a discretionary, but rarely and carefully exercised, act by the President. That the paid holidays created by section 88203's "day of thanksgiving" provision arise from a carefully considered act of presidential discretion does not make those holidays capricious or fortuitous. Nor is it absurd and unintended that paid holidays should arise from an act of discretion by the President; instead, it necessarily follows from the Legislature's deliberate decision in section 88203 to recognize as paid holidays presidentially proclaimed days of thanksgiving.

### III. The Legislative History of Section 88203

The history of section 88203 and of other California statutes (such as Government Code section 6700) that contain the statutory language "every day appointed by the President . . . for a public fast, thanksgiving or holiday" further supports my conclusion that when the President expressly denominates a specific day as a "day of thanksgiving," the President has, without more, "appointed" a day of thanksgiving within the meaning of the statutory language. Most tellingly, under Government Code section 6700, and under section 88203 itself before 1971, Thanksgiving Day is recognized as a holiday solely because the President's proclamation each year naming a Thursday in November to be a "day of thanksgiving" makes that day a "day

---

[6]Indeed, it is not immediately apparent that Presidential Proclamation No. 3919, which nowhere denominates the day of "participation" that it designates as a "day of public fast," a "day of thanksgiving," or a "holiday," is sufficient to qualify as a "day appointed by the President . . . for a public fast, thanksgiving or holiday." If it does, it is only because, as discussed in the text, our decision in Laubisch broadly construed the statutory term "holiday" to encompass not only days literally proclaimed to be "holidays" but also days " 'set apart . . . to rejoice over some great national or historical event . . . .' " (Laubisch v. Roberdo, supra, 43 Cal.2d at p. 710 [quoting Vidal v. Backs (1933) 218 Cal. 99, 105 (21 P.2d 952, 86 A.L.R. 1134)].)

In a further attempt to demonstrate the soundness of its test, the majority cites Presidential Proclamation No. 6409 as an example of a proclamation that does not appoint a day of thanksgiving. (Maj. opn., ante, p. 345.) The majority is correct, but this is so not because Presidential Proclamation No. 6409 fails to meet the majority's "federal-holiday-plus-something-more-than-a-ceremonial-commemoration" test but because, as the majority elsewhere admits (maj. opn., ante, p. 339), the proclamation does not purport to name or otherwise designate a "day of thanksgiving." Presidential Proclamation No. 6409 "urge[s] . . . Americans to . . . pray . . . in thanksgiving" but proclaims "a National Day of Prayer," not a day of thanksgiving. (Pres.Proc. No. 6409, 57 Fed.Reg. 8395 (Mar. 5, 1992), 1992 U.S. Code Cong. & Admin. News, pp. A18-A19.) Because by its terms Presidential Proclamation No. 6409 does not purport to name a day of thanksgiving, it falls outside the scope of section 88203's operative language. (Maj. opn., ante, pp. 339-340.)

appointed by the President . . . for . . . thanksgiving" within the meaning of that statutory language. Because the operative words of President Bush's Persian Gulf War days of thanksgiving proclamation (Proclamation 6257) are essentially identical to those used by Presidents in their Thanksgiving Day proclamations, I conclude that Proclamation 6257 likewise appointed days of thanksgiving under that statutory language.

The operative language of Proclamation 6257 is essentially identical to the language by which Presidents proclaim the annual Thanksgiving Day holiday. (Compare Proc. 6257, 56 Fed.Reg. 10353, *supra*, 1991 U.S. Code Cong. & Admin. News, p. A26 [". . . I . . . do hereby proclaim April 5-7, 1991, as National Days of Thanksgiving. I ask that Americans gather in homes and places of worship to give thanks to Almighty God . . . ."] with Pres.Proc. No. 6380, 56 Fed.Reg. 60043 (Nov. 25, 1991), 1991 U.S. Code Cong. & Admin. News, p. A202 ["I . . . do hereby proclaim Thursday, November 28, 1991, as a National Day of Thanksgiving. I urge all Americans to gather together in their homes and in places of worship on that day to offer thanks to Almighty God . . . ."].) For well over a century, presidential proclamations that take this form have "appointed" days of thanksgiving within the meaning of the statutory language used in section 88203.

Since our Legislature's first use over 120 years ago of the statutory language "every day appointed by the President . . . for . . . thanksgiving" as a description of holidays to be observed, the President's denomination of a day as a "day of thanksgiving" has been sufficient, without more, to trigger a holiday under that language. The Legislature first used the phrase "every day appointed by the President . . . for a public fast, thanksgiving, or holiday" as part of former Political Code section 10, Civil Code former section 7, and Code of Civil Procedure former section 10 when originally enacted in 1872. Those three statutes, which set forth holidays to be observed for various purposes, also listed specific annually recurring holidays, but none of them included Thanksgiving Day on that list. Under those three statutes, Thanksgiving Day was recognized as a holiday only because each annual presidential proclamation naming a Thursday in November to be a "day of thanksgiving" made that Thursday a "day appointed . . . for . . . thanksgiving."

To this day, Thanksgiving Day is not expressly listed as a holiday in Government Code section 6700 (the present-day version of Political Code section 10), Civil Code section 7, or Code of Civil Procedure section 10. It is observed as a holiday under those statutes only because it is "appointed" by the President's act of naming it as a "day of thanksgiving" in words essentially identical to those used by President Bush in Proclamation 6257.

Government Code section 6700, the recodification of Political Code section 10 (Stats. 1951, ch. 655, § 24, p. 1851), is now the law that establishes the general legal holidays of California, as did Political Code section 10 before it. Section 6700 retains unchanged the phrase "[e]very day appointed by the President . . . for a public fast, thanksgiving, or holiday." Section 6700 has never been amended to add Thanksgiving Day to its express list of annually recurring holidays. Instead, Thanksgiving Day is observed under section 6700 as a general legal holiday in California only because the President's annual proclamation naming it a "day of thanksgiving" (see, e.g., Pres.Proc. No. 6380, 56 Fed.Reg. 60043, *supra*, 1991 U.S. Code Cong. & Admin. News, p. A202 [President Bush's 1991 Thanksgiving Day proclamation]) makes it a "day appointed by the President . . . for . . . thanksgiving."[7]

Section 88203's language, "every day appointed by the President . . . for a public fast, thanksgiving or holiday," like the identical language in Government Code section 6700, has its ultimate origins in the 1872 Political Code section 10, Civil Code section 7, and Code of Civil Procedure section 10.[8] Before 1971, Thanksgiving Day was not separately listed as one of the

---

[7]Civil Code section 7 and Code of Civil Procedure section 10 have now been amended so that those sections no longer list holidays themselves but instead expressly incorporate by reference the holidays that Government Code section 6700 sets forth. Thus, Thanksgiving Day is observed under Civil Code section 7 and Code of Civil Procedure section 10 only because under Government Code section 6700 it is a "day appointed by the President . . . for . . . thanksgiving."

[8]Section 88203's language "every day appointed by the President . . . for a public fast, thanksgiving or holiday" arose as follows from the 1872 Political Code section 10, Civil Code section 7, and Code of Civil Procedure section 10. By amendments in 1911 to Political Code section 10, Civil Code section 7, and Code of Civil Procedure section 10, the Legislature provided that "the public schools of this state shall close on . . . every day appointed by the president . . . for a public fast, thanksgiving or holiday." (Stats. 1911, ch. 320, § 1, pp. 520-521 [amending Civ. Code, § 7]; Stats. 1911, ch. 321, § 1, p. 521 [amending Pol. Code, § 10]; Stats. 1911, ch. 597, § 1, p. 1122 [amending Code Civ. Proc., § 10].)

These provisions were carried over by the Legislature when it first enacted the School Code in 1929. Section 3.90 of the School Code provided that "[t]he public schools of this state shall . . . close on . . . every day appointed by the President . . . for a public fast, thanksgiving or holiday." (Stats. 1929, ch. 23, § 3.90, p. 110.) The Legislature repeated this provision in 1943 when it enacted the Education Code to replace the School Code (Stats. 1943, ch. 71, § 8151, p. 473, enacting Ed. Code, former 8151 ["The public schools . . . shall . . . close on . . . every day appointed by the President . . . for a public fast, thanksgiving, or holiday."]), and in 1959 when it reenacted the Education Code and included that provision as part of section 5201 (Stats. 1959, ch. 2, § 5201, p. 758).

In 1963, the Legislature for the first time addressed the entitlement of classified school employees to paid holidays separate from the issue of what holidays the schools should close on. It enacted Education Code section 13656, which tracked the language of Education Code former section 5201 in providing that classified school employees were entitled to a paid holiday for "every day appointed by the President . . . for a public fast, thanksgiving, or holiday" and which did not expressly list Thanksgiving Day as a holiday. (Stats. 1963, ch. 96,

annually recurring holidays expressly set forth in section 88203.[9] Instead, section 88203 made Thanksgiving Day a paid holiday for community college workers solely because, as is still the case under Government Code section 6700, the President's words designating a specific date as a "day of thanksgiving" were sufficient to appoint that date as a day of thanksgiving.

Thus, previously under both Government Code section 6700 and Education Code section 88203, a holiday arose whenever a presidential proclamation named a day as a "day of thanksgiving," as do the annual Thanksgiving Day proclamations whose words parallel those of President Bush's Persian Gulf War days of thanksgiving proclamation. Under both statutes, the President's act of naming a day as a "day of thanksgiving" made it a "day appointed by the President . . . for . . . thanksgiving" and, therefore, a state holiday. Unless the majority proposes that California stop observing Thanksgiving Day as a state holiday, the majority's decision will now create an inconsistency between the two statutes where none existed before.

As a result of the majority's decision, the statutory language "every day appointed by the President . . . for . . . thanksgiving" will now have two different meanings in California's statutes. In Government Code section 6700, that statutory language will encompass proclamations by the President in which he "hereby proclaim[s] . . . a National Day of Thanksgiving" and

§ 1, p. 728). Education Code section 13656 applied to classified employees at all levels of education, from elementary school to community college.

Education Code section 13656 was amended in 1970 to add Thanksgiving Day to its list of annually recurring holidays. (Stats. 1970, ch. 246, § 4, p. 507.) This was done as part of a series of changes designed to conform the observance of annually recurring holidays under section 13656 with their observance under federal law. The federal holiday statute (5 U.S.C. § 6103) includes Thanksgiving Day on its list of annually recurring holidays. As part of the 1970 amendment of section 13656, the Legislature conformed section 13656 to the structure of the federal holiday statute by adding Thanksgiving Day to section 13656's list of annually recurring holidays, as is the case with the federal statute. (Stats. 1970, ch. 246, § 4, p. 507; compare Ed. Code, § 88203 with 5 U.S.C. § 6103). The 1970 amendment of section 13656 also changed the observance of Washington Day and Memorial Day from fixed dates to designated Mondays (Stats. 1970, ch. 246, § 4, p. 507.), to conform section 13656 both with the federal observance of Washington's Birthday and Memorial Day on Mondays and with Government Code section 6700, which had already been amended to change the observance of Washington and Memorial Days to Mondays (Stats. 1969, ch. 1521, § 2, p. 3107).

In 1976, as part of a comprehensive revision of the Education Code that reorganized it by grouping code provisions according to whether they applied to elementary and secondary education or to postsecondary education, the subject matter of section 13656 became two new sections. Section 88203 was created to set forth the entitlement of classified community college employees to paid holidays and Education Code section 45203 was created to set forth the entitlement of classified elementary and secondary school employees. (Stats. 1976, ch. 1010, § 2, p. 4438 [Ed. Code, § 88203]; Stats. 1976, ch. 1010, § 2, p. 3503 [Ed. Code, § 45203].) The language of section 13656 quoted above was carried over unchanged into section 88203 and has continued to this day.

[9]See footnote 8, *ante.*

"urge[s] all Americans to gather together in their homes and in places of worship on that day to offer thanks to Almighty God" (Pres.Proc. No. 6380, 56 Fed.Reg. 60043, *supra*, 1991 U.S. Code Cong. & Admin. News, p. A202 [President Bush's 1991 Thanksgiving Day proclamation]), for, as described above, it is only because that statutory language in section 6700 encompasses proclamations naming a day as a "day of thanksgiving" that Thanksgiving Day is recognized as a general legal holiday in California.[10] In Education Code section 88203, however, that same statutory language will *not* encompass proclamations with the same operative words, including President Bush's Persian Gulf War days of thanksgiving proclamation (Proc. 6257, 56 Fed.Reg. 10353, *supra*, 1991 U.S. Code Cong. & Admin. News, p. A26 [". . . I . . . do hereby proclaim . . . National Days of Thanksgiving. I ask that Americans gather in homes and places of worship to give thanks to Almighty God . . . ."]), because such proclamations do not meet the majority's test of declaring federal employee holidays and calling for more than a ceremonial commemoration. The only other alternative under the majority's decision is for no holidays to arise under section 6700 or section 88203 from any presidential proclamation of a day of thanksgiving, including the annual Thanksgiving Day proclamation.

Finally, our Legislature has shown its awareness that presidential proclamations like President Bush's Persian Gulf War days of thanksgiving proclamation do "appoint[]" days of thanksgiving within the meaning of California's holiday statutes by acting in some cases to limit the creation of such holidays. As described above, Government Code section 6700, like Education Code section 88203, makes holidays of days named by Presidents as days of thanksgiving. Section 6700, however, goes on to provide that, except for Thanksgiving Day, holidays arising from days of thanksgiving named by Presidents "shall not apply to a city, county, or district unless made applicable by charter, or by ordinance or resolution of the governing body thereof." (Gov. Code, § 6700, subd. (m).) The Legislature has not imposed any similar limitation under section 88203. Because the Legislature has expressly considered and has limited, to the extent it believed appropriate, the circumstances under which a presidential proclamation of days of thanksgiving creates a holiday for various purposes under state law, we are

---

[10]Like President Bush's Persian Gulf War Thanksgiving proclamation, presidential Thanksgiving Day proclamations do not meet the majority's threshold test because they do *not* "declare[] a corresponding *federal* [employee] holiday." (Maj. opn., *ante*, p. 342, italics original.) Observance of Thanksgiving as a federal office and employee holiday arises by operation of a federal statute (5 U.S.C. § 6103), not by effect of the President's Thanksgiving Day proclamation. Furthermore, under federal law, federal employee holidays are created by federal statute or Executive Order, and not by presidential proclamation. (5 U.S.C. §§ 6103, 6104.) Thus, the vehicle by which a President appoints a holiday for federal employees is an Executive Order, and not a proclamation.

precluded from revisiting the question and restriking the balance the Legislature has set.

## CONCLUSION

It may appear that, because this case concerns community college employees and because days of thanksgiving are infrequently proclaimed by Presidents, the mischief of the majority's decision will be limited. Statutory construction, however, is one of this court's primary tasks. When the words of a statute are not ambiguous, when the consequences of the statute are not absurd, and when the legislative history and intent reinforce the plain meaning of the statute, a court should enforce the statute according to its terms. Whenever this court does otherwise, it substitutes its judgment for the intent expressed in controlling and unambiguous statutory language by our Legislature and blurs the principles that must guide and limit us in construing statutes.

Here, the statutory language of section 88203 expresses in unambiguous terms the Legislature's intent to create a paid holiday for community college workers in nonacademic positions whenever a President denominates, as did President Bush in his Persian Gulf War days of thanksgiving proclamation, a specific day or days to be "days of thanksgiving." This construction is supported by the legislative history and our decision in *Laubisch* v. *Roberdo*, *supra*, 43 Cal.2d 702, 710. Nor does it lead to any absurd consequences, for history shows that Presidents use the term "day of thanksgiving" only rarely and with great consideration to commemorate, as did President Bush here, events of the highest national significance. For these reasons, I would affirm the judgment of the Court of Appeal, which in turn upheld the ruling of the trial court, and preserve the holidays that the Legislature has granted to the secretaries, janitors, cafeteria workers, and other classified workers of our community colleges.

Mosk, J., concurred.