Filed 3/17/21  Villa v. Villa CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRANK VILLA,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CAITLIN VILLA,<br><br>    Defendant and Appellant;<br><br>E.H. et al.,<br><br>    Real Parties in Interest. | G057675<br><br>(Super. Ct. No. 30-2016-00849070)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Jacki C. Brown, Judge.  Affirmed in part and reversed in part.

York Tabucchi and Celinda Tabucchi for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

No appearance for Real Parties in Interest.

Caitlin Villa[1], the beneficiary of a life estate in her grandfather's house, appeals from the trial court's order approving the sale of the residential property. She asserts there was insufficient evidence to demonstrate the existence of the prerequisites for trust modification Probate Code section 15403.[2] Because we agree the order lacked unanimous beneficiary consent, which is required to apply section 15403, we reverse the court's approval of the trustee's plan of sale of the property. We also reverse the court's posttrial order in favor of an entity not a party to this action. In all other aspects, we affirm the orders.

FACTS

Eusebio Villa (Grandfather) created a revocable trust, which as pertinent to this appeal, left life estates in his residential property (Property) to Caitlin and his other grandchildren (Grandchildren). Specifically, the trust provided the Property "shall continu[e] to be held by the Trustee, in trust, for the use and benefit of [Grandchildren]. Whoever occupies the [Property] shall be responsible for all maintenance, taxes, utilities, insurance, etc. on the premises. Upon the death, of this last named beneficiary . . . the real property shall be sold and the net proceeds of the sale and the rest, residue, and remainder of the Trust Estate shall be distributed to the Trustor's then living heirs to be determined in accordance [with] the laws of intestate succession of the State of California."

Grandfather died in 2011. In early 2016, the Orange County Treasurer-Tax Collector listed the Property on its tax auction list for unpaid property taxes. Real estate investment group Sankofa Investment Group LLC (Sankofa) paid the Property's $30,000 in tax arrears to avoid the tax sale.

---

[1] Because many of the people involved in this appeal share the same last name, for clarity we refer to individuals by their first names. We intend no disrespect.

[2] All further statutory references are to the Probate Code.

Thereafter, Francisco Villa, the successor trustee and Caitlin's uncle (Uncle), filed a petition with the probate court alleging Grandchildren's failure to pay property taxes forfeited their life estates. The petition was titled, "Petition to confirm trust; to recognize trustee; to allow trustee to evict beneficiaries and occupants from trust house; to approve plan to sell the residence and distribute; to recover costs from the occupant-beneficiaries shares of distribution; and to recognize trust ownership over the Nana V. Limited Partnership" (Petition).[3] (Capitalization omitted.) It was based upon sections 850, 11850, and 17200.

The Petition alleged the Property's occupants, which included some of the (mostly minor) beneficiaries, had not paid any Property taxes since 2011, amounting to approximately $35,000. It further contended because of back taxes, the Property was in danger of being sold. Additionally, it alleged the named beneficiaries were aware of the Property's back taxes and required maintenance, but that none were willing or able to assist with the expenses or costs. Uncle sought "permission to consider all beneficiaries as having forfeited their rights of occupancy in the [Property] and that the [t]rustee may sell [the Property] because no beneficiary has been willing to pay the costs and taxes and maintenance." He also stated he was currently in escrow with a buyer to sell the Property, and proposed dividing the sale proceeds to all trust beneficiaries, including himself and others who did not own a life interest in the Property.

Grandchildren objected to the Petition, asserting Uncle failed to advise them that they inherited life estates in the Property or the taxes needed to be paid. They characterized the issue as: "[Uncle] asserts that due [to] his failure to pay property taxes for five years, the life beneficiaries[] have somehow forfeited their interests under the

---

[3] The Property was originally held in joint tenancy by Eusebio and his wife Mary Villa. After Mary passed away, Eusebio held a 100 percent interest in the Property. Eusebio transferred his interest in the Property to his trust in 2005. In 2009, he transferred the Property from his trust to the Nana V. Family Limited Partnership, where it remains.

trust.  He seeks court approval of his agreement to sell [the Property] in exchange for the buyer's payment of past due taxes, preventing a tax sale.  He proposes to distribute the excess sale proceeds to himself and his siblings."  The opposition further contended the Property's sale was unnecessary to prevent a tax sale because less drastic means were available, namely a five-year installment payment program for past due taxes or a bank loan secured by the Property.  Furthermore, the Grandchildren denied they failed to maintain the Property and stated they responded to any reasonable requests for contributions to property taxes.  They explain, "[a]ll minors when Eusebio died, the life beneficiaries reasonably relied on the successor trustee to manage the [Property] on their behalf.  He failed to discharge this duty."

While the Petition was pending, Uncle executed a residential purchase agreement with Sankofa for $350,000.  The purchase agreement acknowledged final closing was subject to court approval.  Uncle transferred title to the Property to Sankofa without receiving any funds.  A representative from Sankofa testified it was "common practice to have a grant deed transferring title . . . prior to the close of escrow."

The trial court denied Uncle's request for forfeiture of Grandchildren's life estates and removed him as the successor trustee.  It then, however, modified the trust to permit the sale of the Property to Sankofa, unless within 60 days the Grandchildren presented an economically feasible plan for the Property's repair, payment of property taxes, and reimbursement to Sankofa for the property taxes it paid.  Specifically, the court stated Grandchildren, "are given an opportunity to retain this [Property], provided within 60 days from November 9, 2018, the[y] 1) pay to or reimburse Sankofa . . . the amount of the tax delinquency paid to the Orange County [Treasurer-Tax C]ollector to avoid the pending tax sale; and 2) they also submit a plan to this court with the approved financing to make all repairs necessary to make the [Property] habitable dealing with all 'red tag' issues of the [C]ity of Santa Ana.  If these two requirements are not done within this time, then the pending sale to Sankofa . . . , as proposed by the now removed trustee Frank

4

Villa, is approved and shall proceed and be completed with the cooperation of the successor trustee of this Trust.  Said plan shall also include a plan to pay any court-approved attorney fees and costs . . . ."

The Grandchildren presented a plan to the trial court to rehabilitate the Property and pay the delinquent taxes.[4]  Caitlin stated she submitted an application to the City of Santa Ana in October 2018, for an owner-occupied residence rehabilitation loan to address the Property's numerous deficiencies.  The Property was "red-tagged" by the Santa Ana Planning and Building Agency's April 5, 2017, code violation citation, stating the Property was "manifestly unsafe for habitation due to structural, sanitation, health and safety conditions."  The Property required extensive interior and exterior repairs, including a new roof, electrical rewiring and a new electrical box, plumbing repairs or replacement, and renovations in the kitchen and bathrooms, among other things.  Caitlin stated her loan application was placed on hold because the City of Santa Ana's sole property inspector retired and there was a delay in finding a replacement.  Caitlin proposed paying the delinquent property taxes over a five-year period.  She also contended Sankofa was not entitled to reimbursement of the property taxes it paid, asserting there was no evidence the successor trustee agreed to reimburse Sankofa if the court did not approve the sale.

In its January 11, 2019, order, the trial court determined the plan was inadequate, stating, the "[c]ourt finds [Caitlin] made a valiant effort but unfortunately the plan had multiple contingencies and deficiencies."  The court did not elaborate on what contingencies or deficiencies were problematic.  It then approved Uncle's plan to sell the Property to Sankofa.  It stated Uncle "will not receive any benefits as to the sale of the

---

[4]        We note while the plan appears to have been submitted just over a month after the trial court's initial deadline, the court accepted the plan as timely, addressed it on the merits, and no objections were made as to its timeliness.  We therefore assume the court granted an extension or otherwise permitted Caitlin to file the plan after the original deadline.

[P]roperty. All benefits will be placed in the trust." The order specified Uncle needed to file a declaration regarding unverified accounts. It also removed Uncle as successor trustee and appointed Caitlin. Caitlin filed a motion for reconsideration, claiming the Grandchildren were not given an opportunity to address the court's "sua sponte legal theory for ordering sale" of the Property, the order for reimbursement to Sankofa for its property tax payment exceeded the court's authority, and there was no evidentiary basis to modify the trust.

At the hearing on a motion for reconsideration, the trial court disclosed it based the modification of the trust on section 15403, a provision not cited in the Petition. It stated the Uncle's prayer for sale of the Property opened all possible legal theories for accomplishing that goal, both pled and unpled. It explained as follows: "Due process was afforded to the [Grandchildren] as they were served with the Petition of Frank Villa in which he prayed for permission to sell the [Property] under the offer by Sankofa; they were also made aware of the [c]ourt's rulings on November 9, 2018 and January 11, 2019, as their counsel was present for those rulings, as was Caitlin . . . , representing herself and the [Grandchildren.] [¶] The [c]ourt's authority to 'modify' the trust, although not in response to a request by the trustee and beneficiaries, is permitted under . . . section 15403, subdivision (b), after the [c]ourt balances the material purpose of the trust against the necessities in this situation of preventing an auction of the Property due to back taxes. This power is premised on *factual* issues, not legal theories. Moreover, [Uncles's P]etition relied on that factual theory as *one* of the bases for the need to sell the [P]roperty. [¶] Although the parties seemed confused as to the [c]ourt's reference to reimbursement, the [c]ourt now clarifies that the reimbursement was to be made to Sankofa for its out-of-pocket expenses in paying the back taxes, *but only if* the [Grandchildren] had been able to present a clear, concrete plan to rehabilitate the [P]roperty within the time available to them (60 days) and thus, retain possession of the [P]roperty under the trust. If the [Grandchildren] retained title of the [P]roperty in the

6

Trust and were able to live there, then Sankofa was to be reimbursed. As they were not able to do that, and the [c]ourt approved the sale to Sankofa, then no reimbursement to Sankofa was ordered; instead, Caitlin . . . was to be reimbursed by Sankofa for the amount she *thought* she had paid towards the back taxes at one point: to wit, $1500-$1600."

DISCUSSION

Caitlin asks us to reverse the trial court's approval of the Property's sale. Specifically, she asserts the court's application of section 15403 lacked substantial evidence and violated due process. She also argues the court's posttrial order requiring payment to Sankofa exceeded its jurisdiction and authority. We agree with Caitlin the court's application of section 15403 was in error and the posttrial order in favor of Sankofa exceeded its authority. Accordingly, we reverse those portions of the court's orders.

I. *Mootness*

As an initial matter, on December 15, 2020, we invited the parties to submit simultaneous letter briefs on whether the intervening sale of the Property at issue rendered the appeal moot. This was because the record and opening brief on appeal suggested the Property had already been sold. (*First Federal Bank of California v. Fegen* (2005) 131 Cal.App.4th 798, 801 [dismissing appeal as moot where real property at issue sold before appeal decided].) Caitlin's response asserted there was no evidence the Property had been sold, and the grant deed transfer was made subject to court approval, which was stayed during the pendency of this appeal. We received no other responses. We accept counsel's representation that no sale has occurred. Accordingly, the appeal is not moot, and review is appropriate.

7

II. *Section 15403*

Caitlin asserts there was insufficient evidence to demonstrate the existence of the prerequisites for trust modification under section 15403. We agree the court erred by applying section 15403 to modify the trust and approve the Property's plan of sale.

Section 15403 provides as follows: "(a) Except as provided in subdivision (b), if all beneficiaries of an irrevocable trust consent, they may petition the court for modification or termination of the trust. [¶] (b) If the continuance of the trust is necessary to carry out a material purpose of the trust, the trust cannot be modified or terminated unless the court, in its discretion, determines that the reason for doing so under the circumstances outweighs the interest in accomplishing a material purpose of the trust. If the trust is subject to a valid restraint on the transfer of a beneficiary's interest as provided in Chapter 2 (commencing with Section 15300), the trust may not be terminated unless the court determines there is good cause to do so." Caitlin contends the trial court erroneously interpreted the statute, stating "[t]he trial court apparently construed unanimous beneficiary consent [subdivision (a)] and accomplishment of the trust's material purposes [subdivision (b)] as alternate grounds for trust modification under [section] 15403. Objector interprets unanimous beneficiary consent and accomplishment of the trust's material purposes as requirements, both of which must be satisfied for modification of an irrevocable trust under [section] 15403." We agree with Caitlin.

"'We first examine the words of the statute and try to give effect to the usual, ordinary import of the language while not rendering any language surplusage. These words must be construed in context and in light of the statute's obvious nature and purpose, and must be given a reasonable and commonsense interpretation that is consistent with the Legislature's apparent purpose and intention.' [Citation.] 'If the statutory language is clear, we should not change it to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citation.]" (*Dignity*

*Health v. Local Initiative Health Care Authority of Los Angeles County* (2020) 44 Cal.App.5th 144, 154.)

The plain meaning of section 15403's first two clauses, "Except as provided in subdivision (b), if all beneficiaries of an irrevocable trust consent," means there are two requirements for trust modification: first, whatever is necessary to avoid falling within the purview of the exception under subdivision (b), and second, unanimous beneficiary consent. Interpretation of subdivisions (a) and (b) as alternative grounds for trust modification would negate section 15403's opening clause, "Except as provided in subdivision (b) . . . ." Such an interpretation ignoring statutory language is disfavored. (See *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 338.)

In addition to its plain meaning, the legislative history of section 15403 also supports the construction requiring unanimous beneficiary consent. The Law Revision Commission Comments to section 15403 note that the statute is drawn from section 337 of the Restatement (Second) of Trusts, which explains: "If all of the beneficiaries of a trust wish to terminate it, the trust will not be continued merely in order to enable the trustee to obtain further compensation. The trustee as such is not a beneficiary of the trust." (Rest.2d Trusts, § 337, com. b, p. 159.)

The plain meaning of section 15403, together with the legislative history, establish that unanimous beneficiary consent and accomplishment of the trust's material purposes are two requirements under the statute. Both must be satisfied to modify an irrevocable trust. Here, there was no evidence of unanimous beneficiary consent. To the contrary, the Grandchildren beneficiaries challenged the Petition and did not want the trust modified. Additionally, the Petition sought to forfeit the Grandchildren's life estates under sections 850, 11850, and 17200, but made no mention of section 15403. The trial court's sua sponte application of section 15403, without unanimous beneficiary consent, was error. It further compounded this error by not disclosing its reasoning until ruling on

9

the motion for reconsideration—depriving Caitlin of any meaningful opportunity to present evidence or argument to refute the application of section 15403.

While the trial court's application of section 15403 lacked substantial evidence, we recognize section 15409 applies to situations where modification or termination of a trust is required due to changed circumstances. It provides, "On petition by a trustee or beneficiary, the court may modify the administrative or dispositive provisions of the trust or terminate the trust if, owing to circumstances not known to the settlor and not anticipated by the settlor, the continuation of the trust under its terms would defeat or substantially impair the accomplishment of the purposes of the trust. In this case, if necessary to carry out the purposes of the trust, the court may order the trustee to do acts that are not authorized or are forbidden by the trust instrument." (§ 15409, subd. (a).) Here, the trial court made no determinations under section 15409. In any event, our record demonstrates sale of the Property was not the only way to preserve the Grandchildren's life estates. Caitlin presented a detailed plan demonstrating ways to address both the delinquent property taxes and the Property's necessary repairs. Indeed, under section 15409, it appears likely the sale of the Property would have defeated, rather than carried out, Grandfather's intent to assure lifetime shelter for his Grandchildren. Simply because Uncle failed to carry out his duties as trustee does not, in and of itself, constitute a changed circumstance to warrant modification of the trust without beneficiary consent.

As a final matter, we agree the trial court lacked the ability to make a posttrial order for reimbursement of paid property taxes in favor of Sankofa, which is not a party to this action or appeal. To the extent Sankofa has any right of reimbursement, about which we express no opinion, it must raise such a claim itself. (See § 17000, subd. (b)(3).)

10

## DISPOSITION

The trial court's order approving the plan of sale as to the Property is reversed.  We also reverse the portion of the court's posttrial order granting Sankofa a right of reimbursement.  In all other aspects, the orders are affirmed.  Caitlin shall recover her costs on appeal.


O'LEARY, P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.